[Cite as *State v. Brautigam*, 2012-Ohio-2599.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.    26134 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY S. BRAUTIGAM | | AKRON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.    11 CRB 07845 |

DECISION AND JOURNAL ENTRY

Dated: June 13, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1}    Anthony Brautigam did not want his wife, Jennifer Brautigam, to take their son from Mr. Brautigam's house, so he took her keys and cell phone, threatened her, and pushed her into a bedroom.  Police cited him for two counts of domestic violence.  A jury found him guilty of the offenses, and the municipal court sentenced him to 180 days in jail.  Mr. Brautigam has appealed, arguing that the municipal court incorrectly sentenced him on both offenses, that it incorrectly admitted other acts evidence, and that it incorrectly allowed Ms. Brautigam to testify about a civil protection order she obtained after the incident.  We affirm in part because the municipal court correctly allowed the other acts evidence and Mr. Brautigam invited any error regarding Ms. Brautigam's testimony about the civil protection order.  We vacate Mr. Brautigam's sentence and remand for resentencing so that the municipal court may consider in

the first instance whether the domestic violence charges are allied offenses of similar import under Section 2941.25 of the Ohio Revised Code.

## FACTS

**{¶2}** Ms. Brautigam testified that, on August 7, 2011, Mr. Brautigam and she had been married for three years, but were living separately. Although they did not have a formal custody agreement, Mr. Brautigam had their three-year-old son and her six-year-old daughter at his house for a couple days because she had to work. After she got off work, Mr. Brautigam invited her over to watch a movie with the children because they missed her. When the movie was over, Mr. Brautigam asked her to spend the night. Although she did not want to, she relented when Mr. Brautigam told her that he would keep calling her if she left.

**{¶3}** According to Ms. Brautigam, when she woke the next morning, Mr. Brautigam was enraged. He had gone through her purse, had her cell phone and keys, and began swearing at her, punching walls, and accusing her of illicit sexual acts. She attempted to leave with her children, but he pushed her into a bedroom and locked her in. He also threatened that "he was going to make [her] life bad," which scared her. He eventually called the police, who arrested him for domestic violence. Ms. Brautigam testified that she developed bruises where Mr. Brautigam pushed her during the confrontation.

## ALLIED OFFENSES

**{¶4}** Mr. Brautigam's first assignment of error is that the municipal court incorrectly sentenced him on both domestic violence counts. He has argued that the counts were allied offenses of similar import committed at the same time and with the same animus. Accordingly, the court could only sentence him on one of the counts under Section 2941.25 of the Ohio Revised Code. Section 2941.25(A) provides that, "[if] the same conduct by defendant can be

construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Under Section 2941.25(B), "[if] the defendant's conduct constitutes two or more offenses of dissimilar import, or [if] his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶5} Police charged Mr. Brautigam with two counts of domestic violence. One was under Section 2919.25(A) and the other was under Section 2919.25(C). Under Section 2919.25(A), "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Under Section 2919.25(C), "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

{¶6} In *State v. Johnson*, 128 Ohio St. 3d 153, 2010-Ohio-6314, the Ohio Supreme Court held that, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id*. at syllabus. It explained that "the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." *Id*. at ¶ 47. "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other." *Id*. at ¶ 48. "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id*. "If the multiple offenses can be committed by the same conduct, then the court

must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id*. at ¶ 49 (quoting *State v. Brown*, 119 Ohio St. 3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring in judgment only)). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id*. at ¶ 50. "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id*. at ¶ 51.

{¶7} Ms. Brautigam testified that, when she woke up in the morning, Mr. Brautigam had her cell phone and keys and he started to act very irate, cussing, screaming, and punching walls. At some point she tried to leave with her children, but he would not let her out of the house and ended up pushing her into a bedroom. Ms. Brautigam also testified that Mr. Brautigam threatened her, but she did not indicate whether it was before, during, or after he pushed her into the bedroom. She said that "[t]he whole thing was about two hours" and that the time between when he pushed her into the room and when police arrived was 30 or 45 minutes. The State has argued that the duration of the incident supports a determination that the counts are separate offenses for which Mr. Brautigam had a separate animus.

{¶8} At his sentencing hearing, Mr. Brautigam did not argue that the offenses should merge under Section 2941.25 and the municipal court did not address the issue sua sponte. Although that does not prevent Mr. Brautigam from raising the issue on appeal, it means that the municipal court has not yet addressed on the record whether the offenses can be and were committed by the same conduct. *State v. Underwood*, 124 Ohio St. 3d 365, 2010-Ohio-1, paragraph one of the syllabus, ¶ 31 (holding that a defendant may make an allied offense

argument for the first time on appeal); *State v. Johnson*, 128 Ohio St. 3d 153, 2010-Ohio-6314, ¶ 49.

**{¶9}** This Court "has consistently refused to apply *Johnson* in the first instance." *State v. Ziemba*, 9th Dist. No. 25886, 2012-Ohio-1717, ¶ 23. Moreover, in the event that the offenses are allied, "the State also must have the opportunity to elect the offense[ ] upon which it wishes to proceed to sentencing." *Id.* Accordingly, consistent with our precedent, we conclude that Mr. Brautigam's sentence must be vacated and this matter remanded to the municipal court to apply *Johnson* in the first instance. *Id.* Mr. Brautigam's first assignment of error is sustained.

## OTHER ACTS EVIDENCE

**{¶10}** Mr. Brautigam's second assignment of error is that the municipal court incorrectly allowed Ms. Brautigam to testify about his prior abusive acts. After the parties examined Ms. Brautigam, the court allowed the jurors to submit questions. One of them was: "Has Mr. Brautigam ever been abusive before when the police were called?" The court asked Ms. Brautigam the question over Mr. Brautigam's objection. She answered "[y]es." The parties then asked follow-up questions, which led Ms. Brautigam to testify that, during a prior incident, Mr. Brautigam smashed her hand in a door, that she did not seek medical treatment for her hand because she was afraid that children's services would take her children, and that it took about a month for her hand to heal. She also testified that she moved into her mother's house following that incident.

**{¶11}** According to Mr. Brautigam, the juror's question violated Rule 404(B) of the Ohio Rules of Evidence and Section 2945.59 of the Ohio Revised Code. Under Section 2945.59, "[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any

acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." Under Evidence Rule 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶12} Section 2945.59 and Evidence Rule 404(B) "codify the common law with respect to evidence of other acts of wrongdoing . . . ." *State v. Lowe*, 69 Ohio St. 3d 527, 530 (1994). This Court has held that Section 2945.59 and Evidence Rule 404(B) "are to be strictly construed against the state and conservatively applied by the trial courts." *State v. Bronner*, 9th Dist. No. 20753, 2002-Ohio-4248, ¶ 93; *see also State v. Broom,* 40 Ohio St. 3d 277, 282 (1988) ("the standard for determining admissibility of such evidence is strict.").

{¶13} Viewed in context, the juror's question was whether the police had ever been called before because Mr. Brautigam was being abusive. That question was probative of whether Ms. Brautigam "believe[d]" that Mr. Brautigam was going to "cause imminent physical harm" to her and, therefore, probative of whether he violated Section 2919.25(C) of the Ohio Revised Code. R.C. 2919.25(C). The municipal court, therefore, correctly allowed the question.

{¶14} Regarding the details that subsequently came out about the prior incident, we note that the State initially had no follow-up questions for Ms. Brautigam. Mr. Brautigam, however, asked her whether she had sought medical treatment after the prior incident. Ms. Brautigam answered "[n]o," suggesting that she had not been injured by him. The State, therefore, asked

additional questions to elicit that Ms. Brautigam had, in fact, been injured during the prior incident and that there was another reason that she did not seek medical treatment.

{¶15} By asking Ms. Brautigam whether she sought medical treatment following the prior incident of abuse, Mr. Brautigam opened the door to questions about Ms. Brautigam's injuries and her reason for not seeking treatment. *See State v. Kelley*, 9th Dist. No. 24660, 2011-Ohio-4999, ¶ 31 (concluding that State was allowed to explore line of questioning on redirect that defendant had raised on cross-examination); *State v. Lollis*, 9th Dist. No. 24826, 2010-Ohio-4457, ¶ 18. He also did not object to the prosecutor's follow-up questions. We, therefore, conclude that he forfeited any error regarding the follow-up questions. Mr. Brautigam's second assignment of error is overruled.

CIVIL PROTECTION ORDER

{¶16} Mr. Brautigam's third assignment of error is that the municipal court incorrectly allowed Ms. Brautigam to testify about a civil protection order that she obtained after the August 7, 2011, incident. He has argued that the court incorrectly allowed him to ask Ms. Brautigam about the order because the issue was irrelevant and the testimony elicited was more prejudicial than probative. He has also argued that the court incorrectly "compelled" him to explain what a civil protection order is, which overemphasized its existence and prejudiced his defense.

{¶17} On cross-examination, Mr. Brautigam asked Ms. Brautigam whether there was a "legal custody arrangement" in effect regarding their son. She answered that "I have a CPO that I was granted temporary rights to [the son]." When Mr. Brautigam started to ask additional questions about "that CPO," the court interrupted and asked his lawyer: "Can you explain what a CPO is to the jury, please?" The lawyer explained that "[a] CPO, for those of you who don't know, is a civil protection order. It's basically a document that prevents [someone] from getting

within 500 feet of whoever holds it. Any contact with them whatsoever, and it doesn't matter why they're there, unless they have some other kind of court order that says, for instance, they can visit their children, they cannot have contact, so [Mr. Brautigam] can no longer have any contact with her whatsoever, phone calls, anything." Mr. Brautigam followed up with questions about whether their son is covered under the civil protection order and whether Ms. Brautigam was attempting to get full custody of their son in divorce proceedings.

{¶18} The record does not reflect that the court "compelled" Mr. Brautigam to provide a full definition of civil protection order and explain the legal consequences of such orders. At the time the court asked Mr. Brautigam's lawyer to explain the term, Ms. Brautigam and Mr. Brautigam's lawyer had only used initials to refer to the civil protection order. Accordingly, the court's statement can be construed as nothing more than a request to identify what the initials represented. Upon review of the record, we conclude that, by asking Ms. Brautigam whether there were any legal documents pertaining to custody, voluntarily providing the jury with a thorough explanation of civil protection orders, and asking Ms. Brautigam several questions about the order, if there was any error by the municipal court, it was invited by Mr. Brautigam. *State ex rel. Bitter v. Missig*, 72 Ohio St. 3d 249, 254 (1995) ("Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make."). Mr. Brautigam's third assignment of error is overruled.

CONCLUSION

{¶19} The municipal court failed to analyze whether the domestic violence offenses the jury found Mr. Brautigam guilty of committing were allied offenses of similar import under Section 2941.25 of the Ohio Revised Code. The court correctly allowed a question about whether Mr. Brautigam had ever been abusive before, and Mr. Brautigam opened the door to

additional questioning about the prior incident. Mr. Brautigam invited any error regarding the civil protection order that Ms. Brautigam obtained. The judgment of the Akron Municipal Court is affirmed in part. Mr. Brautigam's sentence is vacated and this matter is remanded for application of *State v. Johnson*, 128 Ohio St. 3d 153, 2010-Ohio-6314.

Judgment affirmed in part,
sentence vacated,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

J. DEAN CARRO, Appellate Review Office, School of Law, The University of Akron, for Appellant.

CHERI B. CUNNINGHAM, Director of Law, and DOUGLAS J. POWLEY, Chief City Prosecutor, for Appellee.