[Cite as *State v. Chisholm*, 2012-Ohio-3932.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 26007 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| TREPEL D. CHISHOLM | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 11 02 0408 |

DECISION AND JOURNAL ENTRY

Dated: August 29, 2012

MOORE, Judge.

{¶1} Defendant, Trepel D. Chisholm, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms in part, reverses in part, and remands this matter to the trial court for further proceedings consistent with this opinion.

I.

{¶2} On February 24, 2011, the Summit County Grand Jury indicted Mr. Chisholm on one count of sexual battery in violation of R.C. 2907.03(A)(3), one count of rape in violation of R.C. 2907.02(A)(1)(b), and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). At his arraignment, Mr. Chisholm pled not guilty, and the case proceeded to a jury trial. The jury found Mr. Chisholm not guilty of sexual battery, not guilty of rape, guilty of the lesser included offense of attempted rape, and guilty of gross sexual imposition. The trial court sentenced him to six years of incarceration on the attempted rape conviction and to five years of incarceration on the gross sexual imposition conviction, to run concurrently. Mr.

Chisholm timely filed a notice of appeal and raises four assignments of error for our review. We have re-ordered the assignments of error to facilitate our discussion.

II.

**ASSIGNMENT OF ERROR IV**

[MR. CHISHOLM]'S ATTEMPTED RAPE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶3}    In his fourth assignment of error, Mr. Chisholm argues that his attempted rape conviction is against the manifest weight of the evidence. We disagree.

{¶4}    When a defendant asserts that his conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶5}    Here, Mr. Chisholm was convicted of attempted rape in violation of R.C. 2907.02(A)(1)(b) and R.C. 2923.02(A). R.C. 2907.02(A)(1)(b) provides that, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when  * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse,

fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). R.C. 2923.02(A) governs attempted offenses and provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." On appeal, Mr. Chisholm concedes that his conviction for gross sexual imposition was supported by the weight of the evidence. Therefore, we will limit our discussion to a review of the weight of the evidence supporting the attempted rape conviction.

{¶6} As part of its case-in-chief, the State presented the testimony of the victim ("C.J."), the victim's mother ("Mother"), employees of the Ohio Bureau of Criminal Identification ("Bureau"), medical personnel, and police officers. C.J. testified that, in February of 2010, when she was twelve years old, she and her brother moved into their mother's apartment, where she resided with Mr. Chisholm. C.J. had a bedroom adjacent to a bedroom shared by her mother and Mr. Chisholm, and her brother slept on the couch in the living room. On the night at issue, C.J. went to bed around 11:30 p.m. During the night, she awoke to Mr. Chisholm touching her all over her body including her breasts. She asked him what he was doing, and he told her to go back to sleep, and he left her bedroom. Later that night, he returned to her bedroom and started telling her that she was "sexy" and had a "nice body." She pretended to be asleep, hoping that he would leave. He then pulled down her pants and began touching her vagina with his mouth and tongue. After he left, C.J. forced herself back to sleep. She later awoke feeling pain coming from her vaginal area. When she awoke, Mr. Chisholm was on top

of her, and his penis was inside her vaginal lips, pressing against her vaginal opening, and she believed he was "trying" to rape her. She got out of bed and asked what he was doing, and he said he was hanging the curtains in her bedroom and asked if she was okay. She asked why her pants were down, and he said they were down when he came in. He then left her bedroom.

{¶7}   C.J. and her brother woke their mother and told her that Mr. Chisholm had attempted to rape C.J. Mr. Chisholm denied the allegation and contended that he was in C.J.'s room to hang the curtains and did not know what she was talking about. C.J.'s mother called the police, and then she, C.J., and C.J.'s brother left the apartment and went to a neighbor's home. When police officers arrived and asked her what happened, C.J. said that Mr. Chisholm had tried to rape her, but she did not give them specific details. C.J. testified that the officers did not ask for details of the incident, and she did not feel comfortable talking to them. After speaking to the officers, C.J. went to Akron Children's Hospital.

{¶8}   On cross-examination, C.J. confirmed that she had not previously reported to law enforcement that Mr. Chisholm entered her bedroom on three separate occasions that night or that he had touched her vagina with his mouth and tongue. However, C.J. clarified on redirect examination that she had told these details to her aunt, with whom she had been residing for the past seven months. She also had informed the prosecutor of these details approximately one week prior to trial. In addition, C.J. testified that at the time of the incident she did not know what "oral sex" or "vaginal penetration" meant, and she was uncomfortable providing the officers specific details of what had occurred.

{¶9}   Mother testified that at the time of the incident she was involved in a romantic relationship with Mr. Chisholm, and they had been living together for approximately six months. C.J. and C.J.'s brother had been living with their grandmother, but they had moved in with

Mother about one week prior to the incident. C.J. slept in the extra bedroom. On February 25, 2010, Mr. Chisholm left the apartment around 7 or 8 p.m. Mother got out of bed around midnight to check on the children. At that time, C.J. was in her room, her brother was on the couch, and Mr. Chisholm had returned home and was in the kitchen. Mr. Chisholm told Mother that he would be in bed shortly. Mr. Chisholm came to bed about fifteen or twenty minutes thereafter. Shortly after he came to bed, C.J. and her brother knocked on Mother's bedroom door, and she went to speak with them in the living room, where C.J. appeared upset. Mr. Chisholm also came into the living room. C.J. told her mother that Mr. Chisholm had tried to rape her, and he maintained that he was in C.J.'s room to hang a curtain that had fallen earlier that day. Mother called 9-1-1, then took the children to her neighbor's apartment where she again called 9-1-1 and also called her cousin. After officers and Mother's cousin arrived, her cousin took Mother and the children to the hospital.

{¶10} Officers Shawn Chetto and Matthew Beech of the City of Akron Police Department testified that they were dispatched to the scene on February 25, 2010 in response to a 9-1-1 call for assistance. When they arrived, they saw Mr. Chisholm standing outside the apartment looking around. When Mr. Chisholm saw the officers approaching, he returned inside his apartment. C.J. and her mother then exited an adjacent apartment, and re-entered Mother's apartment with the officers. Officer Chetto took Mr. Chisholm into a separate room to talk to him. Mr. Chisholm claimed that he did not understand what was going on. Officer Beech spoke with C.J. and her mother, and C.J. informed him that she had awakened to find her pants removed and Mr. Chisholm on top of her, and she believed he had tried to rape her but was unsure if he had, but she felt "different down there." The officers then escorted Mr. Chisholm to the cruiser and provided him with his Miranda warnings. The officers asked Mr. Chisholm why

he went into C.J.'s bedroom, and he said he went in to hang a curtain rod. Officer Beech saw the curtains on a rod in C.J.'s bedroom leaned against a chair. No brackets were installed in the wall onto which the rod would connect. Further, no tools to install brackets were apparent in the room. The officer asked Mr. Chisholm how he was going to hang the curtains when there were no brackets on which to hang them, and Mr. Chisholm provided no explanation, but instead kept repeating that he was going to hang the curtains. Officer Beech returned inside the apartment, and learned that C.J. was going to go to the hospital. While he was speaking to C.J., she pulled her underwear out from under her pajama pants. The underpants had been torn and were easily removed. C.J. appeared surprised to discover that her underpants were ripped. Officer Chetto contacted his sergeant, who did not believe they had cause to arrest Mr. Chisholm at that point. The officers instead transported Mr. Chisholm to a friend's house and then met C.J. and her mother at the hospital.

{¶11} Detectives David Hayes and Michael Fox, also of the Akron Police Department, testified that they arrived at the apartment on February 25, 2010 to take pictures and collect evidence. When they arrived, Mr. Chisholm was in the responding patrol officers' cruiser. Detective Hayes obtained buccal swabs from Mr. Chisholm with his consent in order to collect his DNA for analysis.

{¶12} Ms. Donna Abbott testified that she is a registered nurse at Akron Children's Hospital's "CARE Center," which evaluates children who have reportedly been the victims of abuse. On the date at issue, C.J. arrived in the emergency room and reported to hospital staff that Mr. Chisholm had attempted to rape her. Ms. Abbott instructed emergency room staff to conduct a sexual assault kit on C.J. and scheduled an appointment for C.J. to return to the CARE Center that afternoon, at which time Ms. Abbott conducted a physical exam on her. That physical exam

did not reveal any injuries to C.J., but Ms. Abbot testified that she typically does not observe physical indications of sexual abuse evident in children who are C.J.'s age.

{¶13} Detective Crystal Bowen-Carter of the Akron Police Department's Juvenile Victim's Unit testified that she became involved in this case on March 1, 2010. Detective Bowen-Carter interviewed Mother and Mr. Chisholm. Mr. Chisholm denied C.J.'s allegations and said he was in her room only to hang a curtain. The detective asked if he had been drinking that night, and he confirmed that he had. The detective also asked if perhaps he went into the wrong bedroom and thought that the C.J. was actually her mother, and he said that he did not, and he was aware that he was in C.J.'s room because he went in that particular room to hang the curtains. After Detective Bowen-Carter learned that Mr. Chisholm had provided a buccal sample, she scheduled the sexual assault kit and the buccal sample to be transported to the Bureau of Criminal Investigation for laboratory testing.

{¶14} Brittani Farinacci, a forensic biologist at the Bureau, testified that she received the sexual assault kit and a package reportedly containing C.J.'s underwear. Farinacci identified semen and amylase present on C.J.'s underwear and amylase present in skin stain samples taken from her inner thighs. Ms. Farinacci testified that amylase is typically present in bodily fluids, primarily saliva.

{¶15} Stacy Violi, a forensic scientist also at the Bureau, tested the DNA found in the swabs taken from the samples of C.J.'s underwear, identifying two DNA profiles, one consistent with C.J. and the other consistent with Mr. Chisholm. From the samples taken from C.J.'s inner thighs, Ms. Violi also identified DNA profiles consistent with C.J. and Mr. Chisholm.

{¶16} Mr. Chisholm testified on his own behalf. Mr. Chisholm stated that, on the night of the incident, he was at a friend's home playing video games and drinking for several hours.

When Mr. Chisholm arrived home, he was intoxicated. He prepared for bed, and he got in bed with an individual whom he believed was C.J.'s mother. He removed her pants and began caressing her buttocks while fondling his penis. The individual then rolled over and said "Hey, who is this? What the hell?" The voice did not sound like C.J.'s mother's, and Chisholm got on top of her only to realize that he was accidentally in C.J.'s bed. According to Mr. Chisholm, he immediately jumped out of bed and attempted to hang the curtains, pretending as though he had entered the room for that purpose.

{¶17} In his merit brief, Mr. Chisholm argues that the attempted rape conviction was against the manifest weight of the evidence because Mr. Chisholm abandoned his intent to have sex with the occupant of the bed upon learning it was C.J., and his testimony established that he did not attempt penetration. However, as set forth above, C.J. testified that, on the night at issue, Mr. Chisholm entered her bedroom three times. On the third occasion, she awoke to pain in her vaginal area, Mr. Chisholm was on top of her, and his penis was pressed against her vagina. From this, the jury could infer that Mr. Chisholm was aware of C.J.'s identity when he entered the room and was attempting penetration when C.J. awoke. Therefore, although the witnesses' testimony presented alternate versions of events, "the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). This is because the jury "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). We cannot say the jury's resolution of the testimonial inconsistencies was unreasonable. *See State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, ¶ 18 ("A conviction is

not against the manifest weight because the [trier of fact] chose to credit the State's version of events."). Further, the jury "has the right to place considerable weight on the testimony of the victim." *State v. Felder*, 9th Dist. No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992).

{¶18} After reviewing the entire record, weighing the inferences, and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding Mr. Chisholm guilty of attempted rape. Accordingly, Mr. Chisholm's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY FAILING TO MERGE THE ATTEMPTED RAPE AND GROSS SEXUAL IMPOSITION CONVICTIONS, IN VIOLATION OF THE FIFTH AMENDMENT PROTECTION AGAINST DOUBLE JEOPARDY, AS THE CRIMES ARE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶19} In his first assignment of error, Mr. Chisholm argues that it was plain error for the trial court to fail to merge his convictions for attempted rape and gross sexual imposition, as these offenses are allied offenses of similar import.

{¶20} In *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, ¶ 44, the Ohio Supreme Court held that, in determining whether two offenses are allied offenses of similar import, "the conduct of the accused must be considered." The court must first determine "whether it is possible to commit one offense *and* commit the other with the same conduct," and, if so, then "the court must determine whether the offenses were committed by the same conduct, i.e. 'a single act, committed with a single state of mind.'" (Emphasis sic.) *Id.* at ¶ 48, 49, *quoting State v. Brown*, 119 Ohio St. 447, 2008–Ohio–4569, ¶ 50 (Lanzinger, J., concurring). If the same conduct constituted both offenses, then they must be merged. *Johnson* at ¶ 50. Failure to merge allied offenses of similar import constitutes plain error, and prejudice exists even where

a defendant's sentences are to run concurrently because "a defendant is prejudiced by having more convictions than are authorized by law." *State v. Underwood*, 124 Ohio St.3d 365, 2010–Ohio–1, ¶ 31.

{¶21} A review of the transcript from the sentencing hearing reveals only one reference to merger of the sentences, wherein the prosecutor noted that "I understand that the attempted rape and the GSI will run concurrently or would merge at sentencing." The court did not explicitly address the issue of merger. When it pronounced the concurrent sentences of six years of incarceration on the attempted rape conviction and five years of incarceration on the gross sexual imposition conviction, Mr. Chisholm did not object to the court's failure to merge the offenses. Although Mr. Chisholm is not precluded from making this argument on appeal, no discussion proceeded on the trial court record as to "whether the offenses can be and were committed by the same conduct." *See State v. Brautigam*, 9th Dist. No. 26134, 2012-Ohio-2599, ¶ 8, citing *State v. Underwood,* 124 Ohio St.3d 365, 2010–Ohio–1, paragraph one of the syllabus, ¶ 31 (holding that a defendant may make an allied offense argument for the first time on appeal), and *Johnson* at ¶ 49.

{¶22} Consistent with this Court's precedent, we decline to apply the *Johnson* analysis in the first instance. *Brautigam* at ¶ 9, citing *State v. Ziemba*, 9th Dist. No. 25886, 2012–Ohio–1717, ¶ 23. Therefore, this matter must be remanded to the trial court to determine whether the attempted rape and gross sexual imposition offenses were allied offenses of similar import. Moreover, in the event that the offenses were allied, "the State also must have the opportunity to elect the offense[ ] upon which it wishes to proceed to sentencing." *Ziemba* at ¶ 23. Accordingly, to the extent that Mr. Chisholm challenges the trial court's failure to determine

whether attempted rape and gross sexual imposition are allied offenses of similar import, his first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE STATE TO PRESENT EVIDENCE OF POSSIBLE ORAL STIMULATION WHEN SAID EVIDENCE HAD NOT BEEN PRESENTED TO THE GRAND JURY.

{¶23} In his second assignment of error, Mr. Chisholm argues that the trial court erred by allowing the State to present evidence of oral stimulation which had not been presented to the grand jury. We disagree.

{¶24} The grand jury indicted Mr. Chisholm on three counts: rape in violation of R.C. 2907.02(A)(1)(b), sexual battery in violation of R.C. 2907.03(A)(3), and gross sexual imposition in violation of R.C. 2907.05(A)(4). In regard to the rape and sexual battery counts, the indictment charged that Mr. Chisholm engaged in "sexual conduct" with C.J. on February 25, 2010. As set forth above, the term "sexual conduct" includes, but is not limited to, cunnilingus and vaginal penetration. R.C. 2907.01(A). Prior to trial, Mr. Chisholm moved to exclude anticipated testimony of C.J. as to his alleged performance of cunnilingus on her on the night at issue, as evidence of this act was not provided to the grand jury. The trial court overruled the motion, and C.J. testified as to the cunnilingus. On appeal, Mr. Chisholm argues that the trial court's allowance of this testimony amounted to reversible error.

{¶25} The Ohio Constitution, Article I, Section 10 provides that, "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury * * *." This provision guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. *Harris v. State*, 125 Ohio St. 257, 264 (1932).

{¶26} Here, Mr. Chisholm maintains that the grand jury was not presented with evidence of cunnilingus, and C.J.'s allegations of cunnilingus would constitute a separate count of rape distinct from the count of rape predicated upon alleged vaginal penetration. Therefore, Mr. Chisholm maintains that he was tried on an additional rape charge which was essentially different from that which was presented to the grand jury.

{¶27} Although C.J.'s testimony indicates that she had not disclosed details of the night at issue, including the alleged cunnilingus, to the prosecutor prior to the State's presentment of the case to the grand jury, the indictment filed by the grand jury charges Mr. Chisholm with engaging in "sexual conduct" with C.J. Cunnilingus is included in the definition of "sexual conduct." R.C. 2907.01(A). As a result, Mr. Chisholm was presented with the essential facts constituting the offense.

{¶28} While we cannot discern from the indictment the specific theory of the case the State had presented to the grand jury, (*see* R.C. 2907.01(A)), Mr. Chisholm at no point requested a bill of particulars to delineate the particular type of sexual conduct in which he was alleged to have engaged. Pursuant to Crim.R. 7(E),

> When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires.

A bill of particulars serves "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171. Because Mr. Chisholm did not request a bill of particulars, the record does not indicate the specific conduct that the State alleged constituted the "sexual conduct." Moreover, even had Mr. Chisholm requested a bill of particulars to identify the specific nature of the sexual conduct in which he

was alleged to have engaged, the State would not have been precluded at trial from requesting an amendment to the bill of particulars to coincide with a theory of the case which had not been presented to the grand jury, so long as the nature and identity of the offense remained unchanged from that contained in the indictment. *See e.g. State v. Brumbeck*, 109 Ohio App.3d 65, 81-82 (9th Dist.1996) (allowing state to amend bill of particulars at trial to include additional theory of conduct constituting tampering not abuse of discretion where the new theory "was consistent with the crime as charged" and defendant was "well prepared to defend against the allegations.")

{¶29} Further, although he argues that "[t]he only way to guarantee that the jury did not convict Mr. Chisholm on this new and improper information is to request that the jury identify whether they convicted Mr. Chisholm based on penetration or cunnilingus," we find it significant that Mr. Chisholm was not convicted of rape. "The placing of one's mouth on the female's genitals *completes* the act of cunnilingus" for purposes of the definition of sexual conduct. (Emphasis added.) *State v. Dillon*, 5th Dist. No. 2008-CA-37, 2009-Ohio-3134, ¶ 95. C.J. testified that Mr. Chisholm placed his mouth and tongue on her vagina, and this action would therefore constitute a completed act of sexual conduct. Therefore, we cannot conclude that Mr. Chisholm was prejudiced by this testimony, as we cannot discern how the outcome of the trial, which resulted in convictions for *attempted* rape and gross sexual imposition, would have been different had the trial court excluded this portion of C.J.'s testimony. Accordingly, Mr. Chisholm's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY GIVING AN IMPROPER INSTRUCTION TO THE JURY ON THE LESSER INCLUDED OFFENSE OF ATTEMPTED RAPE.

{¶30} In his third assignment of error, Mr. Chisholm argues that the trial court erred by providing an instruction to the jury on the lesser included offense of attempted rape which varied in wording from that of the statute and by failing to instruct the jury on the affirmative defense of abandonment. We disagree, and we will examine these issues separately.

Lesser Included Offense

{¶31} Mr. Chisholm argues that the wording of the jury instruction defining attempted rape was improper because it distinguished attempted rape from rape based only upon whether penetration was completed. A trial court must charge a jury with instructions that are a correct and complete statement of the law. *Marshall v. Gibson*, 19 Ohio St.3d 10, 12, (1985). However, the precise language of a jury instruction is within the discretion of the trial court. *Callahan v. Akron Gen. Med. Ctr.*, 9th Dist. No. 22387, 2005-Ohio-5103, ¶ 6; *Youssef v. Parr, Inc.*, 69 Ohio App.3d 679, 690 (8th Dist.1990). In reviewing jury instructions on appeal, this court has previously stated:

> [A]n appellate court reviews the instructions as a whole. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party.

(Citations omitted.) *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 410 (9th Dist.1993).

{¶32} A trial court has no obligation to give jury instructions in the language proposed by the parties, even if the proposed instruction is an accurate statement of the law. *Henderson v. Spring Run Allotment*, 99 Ohio App.3d 633, 638 (9th Dist.1994). "Instead, the court has the discretion to use its own language to communicate the same legal principles." *Id.* Thus, absent an abuse of discretion, this Court will not disturb a trial court's judgment on the basis of the

wording of jury instructions. *See id.* The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621 (1993).

{¶33} Here, the trial court provided the following jury instruction regarding attempt:

Attempt is defined as purposely or knowingly, and when purpose or knowledge is sufficient to culpability for the commission of an offense, engaging in conduct that, if successful, would result or constitute in the offense.

The offense of attempted rape is distinguished from rape by the absence or failure to prove penetration.

{¶34} This instruction tracks the language of the statute defining an attempted offense, except in regard to the last sentence. Mr. Chisholm argues that this sentence was improper because it caused the jury to focus on only one element of the offense of attempted rape. The court's statement is not incorrect. It does not say that the offense of rape is *only* distinguished from attempted rape by the absence of penetration. Moreover, as quoted above, directly prior to this sentence, the trial court provided the statutory definition of an attempted offense. Finally, the parties do not dispute that the trial court properly instructed the jury as to the offense of rape. After reviewing the trial court's instructions in their entirety, we cannot say that the trial court's instructions which contain one sentence isolating the element of penetration was so misleading that it prejudicially affected a substantial right of Mr. Chisholm. *See Wozniak* at 410.

{¶35} Accordingly, insofar as Mr. Chisholm argues that the trial court erred in its instructions to the jury regarding attempted rape, we overrule his third assignment of error.

Abandonment

{¶36} In regard to Mr. Chisholm's argument that the trial court erred by failing to instruct the jury as to the affirmative defense of abandonment, the record does not indicate that Mr. Chisholm requested the trial court to provide such an instruction, nor did he object to the trial court's failure to do so. This Court has held,

> To preserve for appeal the issue of error in the instruction to the jury, an appellant must cite an objection to the instruction on the trial record. In this case, no such objection appears anywhere in the record. A fundamental rule of appellate review is that a reviewing court will not consider as error any issue that a party was aware of but failed to bring to the trial court's attention.

(Internal citations omitted.) *State v. Powers*, 106 Ohio App. 3d 696, 699 (9th Dist.1995). Further, Mr. Chisholm has provided no reason why this Court should address this issue for the first time on appeal. *See State v. Gaiter*, 9th Dist. No. 24758, 2010-Ohio-2205, ¶ 21, citing *In re L.A.B.*, 9th Dist. No. 23309, 2007-Ohio-1479, ¶ 19 (declining to address plain error because the appellant had neither argued it nor explained why we should examine the issue for the first time on appeal).

{¶37} Therefore, insofar as Mr. Chisholm argued that the trial court erred in failing to provide a jury instruction on the affirmative defense of abandonment, his third assignment of error is overruled.

III.

{¶38} Mr. Chisholm's second, third, and fourth assignments of error are overruled. Mr. Chisholm's first assignment of error is sustained. The judgment of the Summit County Common Pleas Court is affirmed in part, reversed in part, and this matter is remanded to the trial court for further consideration on the issue of merger.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.