[Cite as *State v. Castagnola*, 2013-Ohio-1215.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. Nos.    26185 |
| | | 26186 |
| Appellee | | |
| | | |
| v. | | |
| | | APPEAL FROM JUDGMENT |
| NICHOLAS J. CASTAGNOLA | | ENTERED IN THE |
| | | COURT OF COMMON PLEAS |
| Appellant | | COUNTY OF SUMMIT, OHIO |
| | | CASE Nos.    CR 10 07 1951 (B) |
| | | CR 10 08 2244 |

DECISION AND JOURNAL ENTRY

Dated: March 29, 2013

---

MOORE, Presiding Judge.

{¶1}    Defendant-Appellant, Nicholas Castagnola, appeals from his convictions in the Summit County Court of Common Pleas.  This Court affirms in part and reverses in part.

I.

{¶2}    The City of Twinsburg Police Department targeted Mr. Castagnola as a person of interest after more than 20 incidents of criminal mischief had occurred.  Specifically, one or more individuals had been egging cars throughout the city.  One particular incident involved the city's law director.  The day after the law director appeared in court to prosecute Mr. Castagnola for selling alcohol to underage persons, he awoke at his home to find that his car had been egged and that one of its mirrors had been damaged.  Another incident involved the egging of a police car from the City of Reminderville's Police Department.  The police became suspicious of Mr. Castagnola when he and several friends were observed buying a large amount of eggs from Giant

Eagle. An officer responded to Giant Eagle and asked the group about the eggs. Mr. Castagnola replied that the eggs were for a cake that the group planned on baking. The responding officer ultimately confiscated the eggs and released the group. The following day, a cake was sent to the responding officer at the police department, courtesy of Mr. Castagnola and his friends.

{¶3} The police had a breakthrough in the case when an informant came to them and put them into contact with another informant who had information about Mr. Castagnola's involvement in the foregoing incidents. The second informant showed the police ten text messages that he had received from Mr. Castagnola, all of which pointed to his involvement in the crimes. The informant then agreed to wear a wire and have a conversation with Mr. Castagnola at his home. During the conversation, Mr. Castagnola freely discussed having perpetrated numerous incidents of criminal mischief, including the incidents pertaining to the law director and the police car from Reminderville.

{¶4} The text messages the police reviewed and the conversation they heard between Mr. Castagnola and the informant led them to believe that Mr. Castagnola had found the law director's personal address online. Accordingly, the police obtained a warrant to search his home for any computers or other similar devices. The police then executed the warrant and seized two computers from Mr. Castagnola's home. When a forensic specialist searched one of the computers, she observed what appeared to be numerous images depicting child pornography. The police then obtained a second search warrant to inspect the computer's hard drive. The search uncovered a great deal of pornographic material as well as ten images and/or videos of children engaging in sexual activity.

{¶5} A grand jury indicted Mr. Castagnola in two separate cases. In Case No. 2010-07-1951(B) ("the retaliation case"), Mr. Castagnola was indicted on counts of criminal

damaging, vandalism, criminal trespass, possession of criminal tools, two counts of retaliation, and multiple forfeiture specifications. In Case No. 2010-08-2244 ("the pandering case"), Mr. Castagnola was indicted on ten counts of pandering sexually oriented matter involving a minor. Mr. Castagnola filed a motion to suppress in both cases, challenging the warrant the police relied upon to seize the computer from his home. The trial court held a suppression hearing and ultimately denied the motion. Subsequently, a jury trial took place in the retaliation case. The jury found Mr. Castagnola guilty on all counts, but did not find that his property was subject to forfeiture. The pandering case then was tried to the bench, and the judge found Mr. Castagnola guilty on all counts. The court sentenced Mr. Castagnola in each case and ordered the sentences to run consecutively to one another for a total term of 30 months in prison.

{¶6}     Mr. Castagnola now appeals and raises four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED, TO THE PREJUDICE OF [MR. CASTAGNOLA], IN DENYING [MR. CASTAGNOLA'S] MOTION TO SUPPRESS THE COMPUTERS SEIZED AT THE TIME OF THE SEARCH OF [MR. CASTAGNOLA'S] RESIDENCE.

{¶7}     In his first assignment of error, Mr. Castagnola argues that the trial court erred by denying his motion to suppress. Specifically, he argues that the affidavit submitted in support of the warrant upon which the police relied to seize his computers lacked sufficient indicia of probable cause. We disagree.

{¶8}     The Ohio Supreme Court has held that:

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of

> fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied). Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

{¶9} "A warrant shall issue on [] an affidavit * * * sworn to before a judge of a court of record" once the judge "is satisfied that probable cause for the search exists." Crim.R. 41(C)(1)-(2).

> In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). "A court reviewing the sufficiency of probable cause in a submitted affidavit should not substitute its judgment for that of the issuing judge." *State v. Hoang*, 9th Dist. No. 11CA0013-M, 2012-Ohio-3741, ¶ 49. "[T]he duty of a reviewing court is simply to ensure that the [judge] had a substantial basis for concluding that probable cause existed." *George* at paragraph two of the syllabus. Great deference should be afforded to the issuing judge's probable cause determination, "and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

**{¶10}** The issuing judge here based her probable cause determination strictly upon the four corners of the affidavit submitted in support of the warrant. In his affidavit, Detective Mark Kreiger averred that the following property was being concealed at Mr. Castagnola's residence:

> Records and documents either stored on computers, ledgers, or any other electronic recording device to include hard drives and external portable hard drives, cell phones, printers, storage devices of any kind, printed out copies of text messages or emails, cameras, video recorders or any photo imaging devices and their storage media to include tapes, compact discs, or flash drives.

Detective Kreiger wrote that he became aware of approximately 25 incidents of criminal mischief in and around Twinsburg a few weeks before a confidential informant provided the police with information about the incidents. The confidential informant both identified Mr. Castagnola as one of the individuals involved in the mischief and placed the police in contact with another informant whom Detective Kreiger termed "Source May." Detective Kreiger averred that Source May showed the police ten text messages he had received from Mr. Castagnola, all of which pointed to Mr. Catagnola's involvement in the criminal mischief. Detective Kreiger quoted all ten of the text messages in his affidavit. He then wrote that Source May agreed to wear a wire and speak with Mr. Castagnola at his home. During Source May's conversation with Mr. Castagnola, Detective Kreiger averred, Mr. Castagnola admitted that he had damaged several vehicles, including the law director's car. Detective Kreiger stated that Mr. Castagnola said "he found [the law director] online in the clerk of courts" as well as the location of the law director's law office. Detective Kreiger also stated that Mr. Castagnola said he had gone "through [the law director's] mailbox to confirm that [he] did live at the address he found for him online."

**{¶11}** "The question in this case is whether under the totality of the circumstances, Detective Kreiger's affidavit provided a substantial basis for the court's conclusion that there

was a fair probability that evidence of [Mr. Castagnola's criminal activity] would be found [on his computer]." *State v. Crumpler*, 9th Dist. Nos. 26098 & 26118, 2012-Ohio-2601, ¶ 10.  Mr. Castagnola argues that Detective Kreiger's affidavit failed to establish that probable cause existed for the seizure of his computer.  Specifically, he argues that the fact that one form of technology (i.e. a text message) contains evidence of an individual's wrongdoing does not equate to the conclusion that another form of technology (i.e. a computer) will contain similar evidence.  He relies upon *State v. Eash*, 2d Dist. No. 03-CA-34, 2005-Ohio-3749.

{¶12}  In *Eash*, the police obtained a warrant to seize Eash's computer and various other items after several minor females reported that Eash had either propositioned them from or actually assaulted them in his car.  The officer who provided the affidavit in support of the search warrant later testified that he included Eash's computer in the warrant based on his personal experience in law enforcement and recent consultation with a member of the department's Child Abuse Response Team.  *Eash* at ¶ 15.  Specifically, he testified that individuals who preyed upon children sometimes used their computers to hide incriminating evidence.  He neglected, however, to place any of that information in his affidavit.  *Id.*  The affidavit itself did not include any "causal link" between Eash's computer and the reports from the minor females.  *Id.* at ¶ 16.  The Second District found that the State's error in failing to establish any causal link in the affidavit was fatal to the warrant insofar as it concerned Eash's computer because the affidavit did not establish probable cause for the seizure of the computer.  *Id.*

{¶13}  This case is distinguishable from *Eash*.  Detective Kreiger specifically averred in his affidavit that Mr. Castagnola had "found [the law director] online" and had gone "through [the law director's] mailbox to confirm that [he] did live at the address [Mr. Castagnola] found for him online."  Accordingly, Detective Kreiger included averments in his affidavit from which

one could conclude that Mr. Castagnola used the internet to locate the law director's personal residence. Unlike the affidavit in *Eash*, therefore, the affidavit here established a causal link between Mr. Castagnola's alleged criminal activities and the item seized. As a matter of common sense, the issuing judge could have determined that Mr. Castagnola used a computer to conduct the foregoing online searches such that the computer would contain evidence of his criminal activities. *See George*, 45 Ohio St.3d at paragraph one of the syllabus, quoting *Gates*, 462 U.S. at 238-239.

{¶14} Mr. Castagnola argues that, even assuming he obtained certain information online, that fact alone would not give rise to probable cause to seize his computer. According to Mr. Castagnola, it was improper for the issuing judge to infer that he owned a computer and used *his* computer to access online information rather than some other computer or device with internet capabilities. The warrant, however, did not limit the object of the search to a computer. The warrant encompassed any device capable of accessing the internet. It is a matter of common knowledge that a computer is capable of accessing the internet. Mr. Castagnola cites no law for the proposition that the police cannot seize any item with internet capabilities once they have probable cause to establish that an online search has occurred in connection with unlawful activities. *See* App.R. 16(A)(7). This Court will not hold, in the absence of any applicable authority, that the police were required to uncover the exact device Mr. Castagnola used to search for information online before they could secure a warrant. Detective Kreiger's affidavit gave the issuing judge a substantial basis upon which to find that there was a fair probability that any computer in Mr. Castagnola's home contained evidence of his crimes. *See Crumpler*, 2012-Ohio-2601, at ¶ 16. On its face, therefore, the warrant was based upon probable cause.

**{¶15}** Next, Mr. Castagnola argues that the trial court erred by upholding the warrant because some of the information contained in Detective Kreiger's affidavit was untrue. Suppression is "an appropriate remedy where: (1) '* * * [the] judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * *.'" *George*, 45 Ohio St.3d at 331, quoting *U.S. v. Leon*, 468 U.S. 897, 923 (1984). "[T]o successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.'" (Internal citations and quotations omitted.) *State v. Willan*, 9th Dist. No. 24894, 2011-Ohio-6603, ¶ 95. "Reckless disregard means that the affiant had serious doubts of an allegation's truth. Omissions count as false statements if designed to mislead, or * * * made in reckless disregard of whether they would mislead, the [issuing judge]." (Internal quotations and citations omitted.) *State v. Ruffin*, 9th Dist. No. 25916, 2012-Ohio-1330, ¶ 6, quoting *State v. Waddy*, 63 Ohio St.3d 424, 441 (1992).

**{¶16}** Mr. Castagnola argues that Detective Kreiger's averments that he had searched for information online were untrue because he never said he found the law director's address "online." At the suppression hearing, the defense introduced the recording of the wiretapped conversation that took place between Mr. Castagnola and Source May and called Detective Kreiger as a witness. The trial court reviewed the recording in issuing its decision and acknowledged that Mr. Castagnola never uttered the word "online" while speaking with Source May. The court determined, however, that it was reasonable for Detective Kreiger to surmise from all of the information he received that Mr. Castagnola had searched online for the law

director. Accordingly, the trial court rejected Mr. Castagnola's argument that the affidavit contained false statements.

{¶17} Detective Kreiger testified that, given Mr. Castagnola's statements to Source May and the text message he sent, it was his impression that Mr. Castagnola had searched online to find the law director. In two of his text messages, Mr. Castagnola wrote: (1) "Found this address and went to his house * * *" and (2) "How many David M. Maistros' could there be who are attorneys." In the recorded conversation between Mr. Castagnola and Source May, Mr. Castagnola never stated that he found the law director's home "online," but did state that he ultimately had to find the address through the clerk of courts because the address was unlisted. Mr. Castagnola specified that he was able to find the law director's address through the clerk of courts because the law director had received a traffic citation at one point. Detective Kreiger testified that he believed Mr. Castagnola had searched online for the law director's address, so he paraphrased Mr. Castagnola's statements in the affidavit. He specified that Mr. Castagnola's initial text message questioning how many attorneys there could be with the same name as the law director led him to believe that Mr. Castagnola was conducting his search in an online capacity. That belief was bolstered by Mr. Castagnola's statements to Source May that he found the correct address through a search of the clerk of courts' records.

{¶18} Having reviewed the record, we must conclude that Mr. Castagnola failed to show that Detective Kreiger intentionally or recklessly included false statements in his affidavit. *See Willan*, 2011-Ohio-6603, at ¶ 95. Detective Kreiger's affidavit did not quote Mr. Castagnola's actual statements to Source May. Instead, it was based on Detective Kreiger's understanding of what Mr. Castagnola meant by his statements. It was not reckless for Detective Kreiger to surmise that Mr. Castagnola found the law director online given all of the information he

received. Although Mr. Castagnola did not directly state that he searched for records using the clerk of courts *website* to find the law director's address, it was not illogical for Detective Kreiger to form that impression. Mr. Castagnola failed to set forth any evidence that Detective Kreiger made the statements in his affidavit with a reckless disregard for the truth. Consequently, his affidavit cannot be said to have misled the judge. *See George*, 45 Ohio St.3d at 331, quoting *Leon*, 468 U.S. at 923.

{¶19} The trial court correctly concluded that the warrant here was supported by probable cause and properly rejected Mr. Castagnola's argument that Detective Kreiger's affidavit contained false information. Mr. Castagnola's argument that the court erred by denying his motion to suppress lacks merit. Consequently, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

[MR. CASTAGNOLA'S] CONVICTIONS OF PANDERING SEXUALLY ORIENTED MATERIAL INVOLVING MINORS IN CASE NO. 2010-08-3344 [WERE] NOT SUPPORTED BY SUFFICIENT EVIDENCE, IN DEROGATION OF [MR. CASTAGNOLA'S] RIGHT TO DUE PROCESS OF LAW.

{¶20} In his second assignment of error, Mr. Castagnola argues that his pandering convictions are based on insufficient evidence. Specifically, he argues that there was no direct evidence that he possessed or controlled the pornographic images and videos at issue. We do not agree that Mr. Castagnola's pandering convictions are based on insufficient evidence.

{¶21} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

**{¶22}** "No person, with knowledge of the character of the material or performance involved, shall * * * [k]nowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality * * *." R.C. 2907.322(A)(5). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Whoever violates the foregoing statute is guilty of pandering sexually oriented matter involving a minor. R.C. 2907.322(C).

**{¶23}** Mr. Castagnola does not dispute that the computer the police seized from his home contained images and videos that displayed minors engaging in sexual activity. Instead, he argues that the State failed to prove that he either had possession of or control over those items. Because there was testimony that many individuals used the computer in his home, Mr. Castagnola argues, there was no evidence that he even knew the images and videos were saved on the computer.

**{¶24}** At the time the police executed their warrant, Mr. Castagnola lived at his mother's home along with his younger brother and his grandfather. Officer Michael Krejci testified that the computer later found to contain pornographic material was seized from an alcove in the home's family room. Natasha Branam, a forensic scientist from the Bureau of Criminal Identification and Investigation's Cyber Crime Unit, analyzed the hard drive of the computer. Branam testified that the computer had three different user profiles: Debbie, Nick, and Nick C.

All three profiles were password protected. With the aid of her forensic software, Branam was able to decipher the password for the Debbie profile within approximately half an hour. She also used forensic software to attempt to decipher the passwords for the Nick and Nick C. profiles. After five days and more than six trillion attempts by her computers, however, Branam abandoned the search. She testified that she was never able to decipher the extremely strong passwords for either the Nick or Nick C. profiles.

{¶25} Even without the passwords for the Nick and Nick C. profiles, Branam explained that she was able to examine the entire contents of the computer's hard drive through her forensic software. Once she found any item of interest, she was also able to determine where the item was stored; that is, under which user profile. Branam testified that: (1) the Debbie profile was created August 4, 2008, and had been accessed 900 times between its creation date and June 29, 2010, the date of the seizure; (2) the Nick C. profile was created May 10, 2009, and had been accessed 26 times between its creation date and the date of the seizure; and (3) the Nick profile was created August 2, 2008, and had been accessed 2,192 times between its creation date and June 17, 2010, the last date the profile was accessed. Branam did not find any pornography within the Nick C. profile. Within the Debbie and Nick profiles, Branam testified that she found 629 videos and 395 images of potential child pornography. She testified that the majority of all the videos and images were located within the Nick profile and that all of the images and videos associated with Mr. Castagnola's ten pandering charges were located within the Nick profile. Further, she testified that the images and videos linked to Mr. Castagnola's pandering charges had all been downloaded to the computer. She specified that those images and videos were not the result of accidental pop-ups, but required affirmative steps on the part of a user to accept the

items for download. Branam testified that more than one-third of the storage space on the computer's hard drive was allocated to pornographic material.

{¶26} In addition to the child pornography that she found within the Nick profile, Branam testified that she found several other items of interest. In particular, she found several documents related to legal research, motions, and court proceedings. One document contained a copy of a section of the Revised Code that dealt with the use and purchase of alcohol by a minor. Branam testified that another document appeared to be a school paper. She testified that the paper was captioned: "Nick Castagnola, * * * Poetry Writing II, April 8th, 2010."

{¶27} Deborah Castagnola, Mr. Castagnola's mother, testified that she knew the passwords to all of the user profiles on the computer because she wanted to be able to monitor the profiles at any given time. She testified that the Debbie profile on the computer belonged to her and that Mr. Castagnola had given her the passwords for the Nick and Nick C. profiles. Mr. Castagnola also provided the court with the passwords for the Nick and Nick C. profiles during the trial. Ms. Castagnola testified that she accessed the other user profiles from time to time, but never saw any pornographic material on the computer.

{¶28} Possession is "a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." *State v. Butler*, 9th Dist. No. 24446, 2009-Ohio-1866, ¶ 18, quoting R.C. 2901.21(D)(1). Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State proved beyond a reasonable doubt that Mr. Castagnola possessed or controlled the pornographic material that formed the basis for the ten pandering counts. All of the images and videos that formed the basis for Mr. Castagnola's pandering counts were found within the Nick user profile and had been actually downloaded by a

user of that profile. The Nick profile also contained other documents associated with Mr. Castagnola. Specifically, it contained a school paper with his name on it and legal research regarding the use and purchase of alcohol by a minor; a topic that would have been relevant to Mr. Castagnola's initial charge for selling alcohol to underage persons. Moreover, the password for the Nick profile was extremely strong. Six trillion attempts to decipher it through the use of forensic software failed. It, therefore, would have been difficult if not impossible for anyone to use the Nick profile without already knowing the password. Mr. Castagnola's mother testified that he provided her with the password for the Nick profile. Mr. Castagnola also admitted at trial that he knew the password. Further, even if some other individual knew all of the passwords for the computer, there was evidence that one-third of the storage space on the computer's hard drive was allocated to pornographic material and two of its profiles contained 629 videos and 395 images of potential child pornography. None of the profiles on the computer existed for more than two years, and the computer was located in the family room of Mr. Castagnola's home. The evidence, therefore, pointed to the conclusion that the individual who downloaded the pornographic material onto the computer resided at the Castagnola home.

{¶29} Although the State did not produce any direct evidence that Mr. Castagnola possessed or controlled the pornographic images and videos at issue, it was not required to do so. This Court has recognized that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Reglus*, 9th Dist. No. 25914, 2012-Ohio-1174, ¶ 13, quoting *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Having reviewed the record, we cannot conclude that Mr. Castagnola's pandering convictions are based on insufficient evidence. His second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED IN FAILING TO MERGE [MR. CASTAGNOLA'S] CONVICTIONS IN COUNT 1 WITH COUNT 2, AND IN COUNT 3 WITH COUNT 4, IN CASE NO. 2010-07-1051.

{¶30} In his third assignment of error, Mr. Castagnola argues that the trial court erred by sentencing him to allied offenses of similar import with regard to his retaliation case. Specifically, he argues that his retaliation and criminal damaging counts (Counts 1 and 2) should have merged, as they both arose from his damaging the law director's car, and his retaliation and vandalism counts (Counts 3 and 4) should have merged, as they both arose from his damaging a Reminderville police car.

{¶31} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus, the Supreme Court of Ohio held that, in determining whether two offenses are allied offenses of similar import, "the conduct of the accused must be considered." The court must first determine "whether it is possible to commit one offense and commit the other with the same conduct," and, if so, then "the court must determine whether the offenses were committed by the same conduct, i.e. 'a single act, committed with a single state of mind.'" (Emphasis omitted.) *Id.* at ¶ 48, 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring). If the answer to both inquiries is yes, then the offenses must be merged. *Johnson* at ¶ 50. The "failure to merge allied offenses of similar import constitutes plain error, and prejudice exists even where a defendant's sentences are to run concurrently because 'a defendant is prejudiced by having more convictions than are authorized by law.'" *State v. Asefi*, 9th Dist. No. 26430, 2012-Ohio-6101, ¶ 6, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

{¶32} The record does not support the conclusion that the trial court considered and applied *Johnson* when it sentenced Mr. Castagnola. During defense counsel's sentencing

recommendation, the trial judge expressed his view that all of the charges related to the retaliation event of June 15, 2010, "should merge" and that the charges related to the retaliation event of June 20, 2010, "should be considered together." The court then stated, however:

> Now, technically, a person could receive separate sentences for each of those if the Court were to find that they were committed with a separate animus within those [] days. So I am not speaking in terms of technical legal interpretation; I am just indicating to you how I look at these sets of charges.

No further discussion took place on the issue of animus. Moreover, neither the parties nor the court ever discussed *Johnson* or the test set forth therein. After the sentencing recommendations and Mr. Castagnola's allocution, the court simply sentenced him on each of his separate offenses.

{¶33} Were this Court to apply *Johnson* to Mr. Castagnola's arguments, we would be doing so in the first instance. This Court has consistently declined to do so. *See, e.g., State v. Chisholm*, 9th Dist. No. 26007, 2012-Ohio-3932, ¶ 22. Therefore, this matter must be remanded to the trial court for it to apply *Johnson* and determine whether Mr. Castagnola's offenses should merge. "Moreover, in the event that the offenses are allied, 'the State also must have the opportunity to elect the offense[] upon which it wishes to proceed to sentencing.'" *Asefi* at ¶ 8, quoting *State v. Ziemba*, 9th Dist. No. 25886, 2012-Ohio-1717, ¶ 23. Mr. Castagnola's third assignment of error is sustained solely on the basis that this matter must be remanded, consistent with the foregoing discussion.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW BY SENTENCING [MR. CASTAGNOLA] TO CONSECUTIVE TERMS OF IMPRISONMENT WITHOUT MAKING FINDINGS AT THE TIME OF THE SENTENCING HEARING, AND WITHOUT GIVING REASONS FOR THE FINDINGS IN THE JOURNAL ENTRY OF SENTENCING, AS REQUIRED BY R.C. §2929.14(C)(4).

**{¶34}** In his fourth assignment of error, Mr. Castagnola argues that the trial court erred by imposing consecutive sentence terms upon him without setting forth the reasons and findings behind the issuance of the consecutive terms. Based on this Court's resolution of Mr. Castagnola's third assignment of error, Mr. Castagnola's sentence could change upon remand. Accordingly, we decline to address his fourth assignment of error at this time. *See State v. Furman*, 9th Dist. No. 26394, 2012-Ohio-6211, ¶ 5.

III.

**{¶35}** Mr. Castagnola's first and second assignments of error are overruled. His third assignment of error is sustained insofar as the matter is remanded for the trial court to apply *State v. Johnson* in the first instance. Due to the remand, this Court declines to address his fourth assignment of error. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
CARLA MOORE
FOR THE COURT


WHITMORE, J.
<u>CONCURS.</u>

CARR, J.
<u>DISSENTING.</u>

{¶36} I would sustain Mr. Castagnola's first assignment of error because the State's invasion into the Castagnola family home and seizure of all the computers was not supported by probable cause that "evidence of a crime" would be found. Consequently, his remaining assignments of error would have been rendered moot.

{¶37} I must begin by emphasizing that "[w]e are bound to defend the liberties of even the most despised members of society, for it is in their cases that our freedoms are most at risk." *United States v. Ivy*, 165 F.3d 397, 404 (6th Cir.1998). "The occasional benefits that compliance with the Fourth Amendment confers upon the guilty must be recognized as a necessary consequence of guaranteeing constitutional protections for all members of our community" because the law defining the parameters of the Fourth Amendment arises only in cases in which criminal activity was uncovered. *Id.* The heinous activity uncovered on Mr. Castagnola's computer, however, should not cloud this Court's review of the manner in which that evidence

was found. "There is always a temptation in criminal cases to let the end justify the means, but as guardians of the Constitution, we must resist that temptation." *State v. Gardner*, Slip Opinion No. 2012-Ohio-5683, ¶ 24, citing *United States v. Mesa,* 62 F.3d 159, 163 (6th Cir.1995); *see also State v. Friedman*, 194 Ohio App.3d 677, 2011-Ohio-2989, ¶ 15-25 (9th Dist.) (Carr, J., dissenting). "While I am a strong advocate of zealous law enforcement, the rights of individuals must not be lost in that pursuit." *State v. Vinez*, 9th Dist. No. 2687, 1992 WL 131397, *3 (June 10, 1992) (Cacioppo, J., dissenting). "It is the duty of this court to guard zealously the constitutional rights of individuals against overzealous police practices. This is necessary to insure that the rights guaranteed in the Constitution do not become but a form of words in the hands of government officials." *Id.*

**{¶38}** We must not lose sight of the significant fact that, at the time the warrant was issued in this case, Mr. Castagnola was not suspected of downloading child pornography or engaging in any other illegal computer activity. He was suspected of committing repeated acts of vandalism, only one of which was even arguably connected to a computer in his home. The only purported reason for the entry into his home and seizure of the computers was to verify that Mr. Castagnola had looked online to obtain the law director's home address.

**{¶39}** Even if I could agree that there was a "fair probability" that there would be a computer in the home that would verify that he had searched and obtained the law director's address, that single online search was not sufficiently connected to criminal activity to justify this serious intrusion into the privacy rights of the Castagnola family. *See State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). In stark contrast to the type of computer evidence that is typically targeted by a search warrant, Mr. Castagnola's online search for the law director's address was not illegal

activity, nor was it a fruit, contraband, or an instrumentality of any crime. It was a piece of "mere evidence" to connect Mr. Castagnola to the crimes committed at the law director's home. *See Warden v. Hayden*, 387 U.S. 294 (1967). Whether that one online search also constituted "evidence of a crime" as that term is used in *Illinois v. Gates* requires further examination.

{¶40} When the United States Supreme Court first authorized the seizure of "mere evidence" pursuant to a warrant or exception to the warrant requirement, it emphasized that there must be a sufficient nexus between that evidence and the criminal activity. *Warden v. Hayden*, 387 U.S. at 307. It explained that, although the "nexus" between the item seized and criminal activity is "automatically provided in the case of fruits, instrumentalities or contraband," no such connection to criminal activity can be presumed in the case of "mere evidence." *Id.* "[I]n the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Id*. Moreover, "consideration of police purposes will be required." *Id.*; *see also Zurcher v. Stanford Daily,* 436 U.S. 547, 577 (1978) (Stephens, J., dissenting); *Andresen v Maryland*, 427 U.S. 463, 483 (1976).

{¶41} After the decision of the United States Supreme Court in *Illinois v. Gates*, probable cause analysis typically presumes that the evidence seized is, in fact, "evidence of a crime," without analyzing whether the evidence has a sufficient nexus to the criminal activity, whether it will aid the apprehension or conviction of a particular suspect, and/or the purpose of the police in seeking the warrant. Perhaps because search warrants typically target contraband, instrumentalities, or evidence that is otherwise obviously connected to criminal activity, the question of the "nexus" and "mere evidence" is not often litigated. Nevertheless, even after *Illinois v. Gates*, the *Warden v. Hayden* "mere evidence" reasoning remains good law. Although *Warden v. Hayden* is most often cited for its formal recognition of the "hot pursuit" exception to

the warrant requirement, the United States Supreme Court has continued to apply its reasoning pertaining to probable cause to seize "mere evidence" of a crime. *E.g.*, *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985).

**{¶42}** Although Ohio courts have not continued to apply the *Warden v. Hayden* "mere evidence" analysis, courts in other jurisdictions have. *See, e.g., State v. Santini*, 64 So.3d 790, 798 (La.App.2011); *Kennedy v. State*, 338 S.W.3d 84, 92 (Tex.App.2011); *Commonwealth v. Jones*, 605 Pa. 188 (2010); *United States v. Rozell*, D.Minn. No. CRIM.04-241(1) JRT/R, 2004 WL 2801591 (Nov. 19, 2004); *United States v. Alexander*, E.D.Mich. No. 04-20005-BC, 2004 WL 2095701 (Sept. 14, 2004); *State v. Mitchell*, 20 S.W.3d 546, 556 (Mo.App.2000); *United States v. Gilbert*, 94 F.Supp.2d 163, 168 (D.Mass.2000); *Commonwealth v. Ellis*, Mass.Super. No. 97-192, 1999 WL 823741 (Aug. 18, 1999); *State v. Thompson*, Conn. Super. Ct. No. CR 1895928, 1999 WL 545353 (July 16, 1999).

**{¶43}** To determine whether there was sufficient nexus between the evidence targeted by the warrant (an online search for the law director's address) and the criminal activity at issue here (vandalism and retaliation against the law director), the probable cause inquiry required an examination of whether there was cause to believe that this piece of evidence would aid in the apprehension and/or conviction of Mr. Castagnola. Through the recording of Mr. Castagnola's statement to Informant May, and text messages sent from Mr. Castagnola's phone, the police already had evidence that he had obtained the law director's home address and that he had participated in the acts of vandalism at his home. Although the police had an interest in obtaining evidence to corroborate that fact, the extent to which Mr. Castagnola's actual online search would aid in his conviction was minimal.

**{¶44}** Weighed against the government's interest in obtaining that one piece of corroborating evidence, on the other hand, was the intrusion into the private home of the Castagnola family to seize all of the family computers. The probable cause inquiry here must include an examination of whether it was reasonable to search all computers in the home to find evidence that Mr. Castagnola conducted an online search for the law director's home address. Searching for evidence that is believed to be stored on a computer poses a serious threat to the privacy rights of anyone who has used that computer. As one court emphasized, "Computers are simultaneously file cabinets (with millions of files) and locked desk drawers; they can be repositories of innocent and deeply personal information, but also of evidence of crimes." *United States v. Adjani*, 452 F.3d 1140, 1152 (9th Cir.2006).

**{¶45}** In authorizing a warrant to invade the privacy interests in the vast amount of information stored on a computer, courts must strike a reasonable balance between the government's ability to prosecute crimes and the privacy rights of the individuals who have personal information stored on those computers. *See id.* Moreover, even when a search for information on a computer is justified, the warrant should identify that information with particularity and the search should be limited in scope accordingly. *See, e.g., United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir.2009).

**{¶46}** As the Vermont Supreme Court recently emphasized in its review of a warrant to search electronic records, "we ask judicial officers to ensure * * * not simply that there is a reason to believe evidence may be uncovered but that there is a reason that will justify an intrusion on a citizen's privacy interest." *In re Appeal of Application for Search Warrant*, --- A.3d ----, 2012 Vt. 102, ¶ 31. It is "essential that a judicial officer be cognizant of the general

type of invasion being proposed" and remember that "[t]here is interplay between probable cause, particularity, and reasonableness." *Id.* at ¶ 31, 33.

**{¶47}** In examining the "totality" of the circumstances, the trial court is always required to "make a practical, common-sense decision," based on *all* of the circumstances set forth in the affidavit. *State v. George,* 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983). Viewing these facts through "the lens of common sense," the probable cause analysis must always consider the "reasonableness" of the government invasion. *See Florida v. Harris*, ____ U.S. ____, 2013 WL 598440; *Pennsylvania v. Mimms*, 434 U.S. 106, 108-109 (1977). Reasonableness is a fluid concept that requires balancing the competing "'public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Id.* at 109, quoting *United States v. Brignoni-Ponce,* 422 U.S. 873, 878 (1975).

**{¶48}** Viewing these circumstances through a lens of common sense, the government's need for corroborating evidence that Mr. Castagnola obtained the law director's address online did not outweigh the privacy rights at issue here. Moreover, the probable cause inquiry requires a "consideration of police purposes" for requesting the warrant. *Warden v. Hayden*, 387 U.S. at 307. The police had no reason to search the computers for anything other than verification that Mr. Castagnola had found the law director's address. No facts in the affidavit even suggested that any other evidence would be found on the computer to connect Mr. Castagnola to criminal activity.

**{¶49}** At the suppression hearing, Detective Kreiger admitted that, aside from information that Mr. Castagnola had found the law director's address in court records, he had received no information to support his belief that Mr. Castagnola had used a computer in

connection with any of these crimes. Although the detective had no information to even suggest that other evidence would be found on the computers, because Mr. Castagnola had been so "blatant" in sending out text messages and talking about the "egging" incidents, the detective testified that he "assumed" that there would "probably [be] other items in the house that would be of evidentiary value."

{¶50} That testimony and the facts as stated in the affidavit suggested that the police believed that they would find other evidence on the computers to connect Mr. Castagnola to acts of vandalism, yet the affidavit stated no factual basis to support that belief. A warrant to perform a "general, exploratory rummaging in a person's belongings," is prohibited by the Fourth Amendment. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "[T]here must be some threshold showing before the government may 'seize the haystack to look for the needle.'" (Internal citations omitted.) *United States v. Hill*, 459 F.3d 966, 975 (9th Cir.2006). I do not believe that the State made such a threshold showing in this case. For these reasons, I respectfully dissent.

APPEARANCES:

RUSSELL S. BENSING, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.