[Cite as *State v. Minor*, 2013-Ohio-558.]

STATE OF OHIO     )            IN THE COURT OF APPEALS
                    )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

| | |
|---|---|
| STATE OF OHIO | C.A. No. 26362 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TERRENCE O. MINOR | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 09 2686 |

DECISION AND JOURNAL ENTRY

Dated: February 20, 2013

---

WHITMORE, Judge.

{¶1} Defendant-Appellant, Terrence Minor, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} On September 18, 2011, Demetrion Wilson was shot and killed at a home on Day Street in Akron. That afternoon, Demetrion was at the house with his brother, Dominique, his cousins, Tionna and Amar, and a friend, Brandon. While the group was relaxing on the front porch, two cars pulled up in front of the house.

{¶3} Minor was driving the first car and, according to some testimony, was accompanied by two unknown men. Desirae Wilson and at least two other women were in the second car. Desirae is Minor's girlfriend and Demetrion and Dominique's sister. According to the group on the porch, Minor and Desirae were looking for a fight. While Demetrion, Desirae, and Dominique were arguing, Minor returned to his car. As Demetrion and Dominique were

walking towards Minor, he retrieved a loaded gun from under the driver's seat, cocked the gun, stood on the floorboard of the car, and fired the gun over the top of the car, towards Demetrion and Dominique. At least three shots were fired before Minor, Desirae, and their companions returned to their cars and fled the scene.

{¶4} Demetrion, Dominique, Amar, and Brandon fled on foot during the gunfire, but returned as soon as the cars left. Demetrion, having been shot in the chest, collapsed on his way back to the house.

{¶5} Minor was charged with aggravated murder and murder, both with firearm specifications. He was also charged with weapons under disability. Minor pleaded guilty to weapons under disability, and a jury found him guilty of both murder counts, including their attendant specifications. The court found that the murder counts merged and sentenced Minor to life imprisonment with the possibility of parole after 31 years. Minor now appeals from his convictions and raises one assignment of error for our review.

II

Assignment of Error

THE EVIDENCE WAS INSUFFICIENT AND AGAINST THE MANIFEST
WEIGHT, AS MATTERS OF LAW, TO CONVICT TERRANCE (SIC) MINOR
OF HOMICIDE WITH REGARD TO DEMETRIOUS WILSON.

{¶6} In his sole assignment of error, Minor argues that there is insufficient evidence to support his convictions, and that his convictions are against the manifest weight of the evidence. We disagree.

**Sufficiency of the Evidence**

{¶7} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to

support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶8}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

**{¶9}** Minor was convicted of aggravated murder and murder. Minor does not challenge the sufficiency of any particular element of his convictions, but argues that the evidence is insufficient to establish that the bullets he fired from his gun caused the death of Demetrion Wilson. "[I]dentity is an element that must be proven by the state beyond a reasonable doubt * * *." *State v. Flynn*, 9th Dist. No. 06CA0096-M, 2007-Ohio-6210, ¶ 12.

**{¶10}** The testimony of the eye-witnesses was consistent in that Minor returned to his car, retrieved a loaded gun, and fired at least three shots. All agreed that Minor was the only person to discharge a gun. Additionally, Dominique, Tionna, Amar, and Brandon testified that Minor was the only person in possession of a gun. Dominique, Amar, and Brandon further testified that Minor fired shots towards, or directly at, Demetrion and Dominique.

**{¶11}** Dr. Dorothy Dean, a forensic pathologist with the Summit County Medical Examiner's Office, performed the autopsy and determined Demetrion's death was caused by "a gunshot wound to the torso."

**{¶12}** Viewing the evidence in a light most favorable to the State, we conclude there is sufficient evidence to support the finding beyond a reasonable doubt that one of the bullets fired by Minor caused the death of Demetrion.

**Against the Manifest Weight of the Evidence**

**{¶13}** A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387. An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

**{¶14}** Minor argues that his convictions are against the manifest weight of the evidence because the testimony of the State's witnesses is inconsistent and the witnesses are not credible. "While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identifying the defendant are matters

affecting the weight of the evidence." *Flynn*, 2007-Ohio-6210, at ¶ 12. Minor did not testify at trial, but presented three witnesses on his behalf.

State's Witnesses

{¶15} Dominique, Tionna, Amar, and Brandon testified on behalf of the State. According to their testimony, the group was sitting in front of the Day Street home when two cars arrived. Minor, the driver of the first car, exited the vehicle looking for a fight. Desirae, a passenger in the second car, arrived agitated and approached the house also looking for a fight. Desirae testified that she was mad and looking to fight her brother's girlfriend because her brothers wanted to fight Minor, her boyfriend.

{¶16} The State's eye-witnesses testified that Demetrion and Desirae began to argue; Dominique stepped in between them to try to calm the situation, and Demetrion pushed or slapped Desirae in the face to get her to back away. During this time, according to the State's eye-witnesses, Minor walked back to his car and retrieved a loaded, black gun from under the driver's seat. Demetrion, followed by Dominique, began walking towards Minor. Minor then stood up inside the door and fired the gun at them over the top of the car. Dominique testified that he and Demetrion began to run up the street, but that Demetrion tripped over the curb and Dominique fell over him. The two, according to Dominique, got up and continued to run.

{¶17} Minor points to inconsistencies in the testimony of the State's eye-witnesses and argues that these inconsistencies prove that these witnesses are not credible. Minor further argues that the State's witnesses are not competent. However, Minor fails to explain why he believes the witnesses were not competent to testify. Based on his arguments as they are set forth, we presume Minor meant the State's witnesses were biased.

{¶18} Minor, without citing to the record, argues that the witnesses testified inconsistently about whether he fired over the roof, hood, or trunk of the car. None of the State's eye-witnesses testified that Minor fired over the trunk of the car. The witnesses do appear to use the words "hood" and "roof" interchangeably. Dominique testified that he understood them to mean the same thing. Amar and Brandon, despite using the term "hood," testified that Minor stood up inside the door and fired over top of the car. Tionna testified that Minor fired once over the top of the car and then moved between the two cars before firing again. She also testified that she did not see Minor's second shot because she was watching Demetrion and Dominique run down the street.

{¶19} There were inconsistencies in the testimony from the State's eye-witnesses. For example, the witnesses did not agree as to where everyone was at the time the cars pulled up or at the time Minor fired his gun. The witnesses' testimony was also inconsistent about who was with Demetrion when he collapsed.

{¶20} Tionna testified that she was the first one to reach Demetrion after he fell and that she tried to pick him up. Tionna further testified that Dominique, Amar, and a female neighbor arrived shortly thereafter. Tionna said she then left and went into the house to call her mother. Amar testified that he ran over to Demetrion when he collapsed and tried to flip him over, but a female neighbor stopped him. According to Amar, Tionna remained on the porch while he, Dominique, and the neighbor tended to Demetrion. Dominique said he wanted to pick Demetrion up and hold him, but he did not. He testified that Tionna and Amar were standing with him by Demetrion. Despite some inconsistent testimony about where Tionna was when Demetrion fell, they all testified that Demetrion was seen coming up the street towards 614 Day Street holding his chest. He fell to his knees and then collapsed, face down.

Defense's Witnesses

{¶21} Crystal Vincent, Minor's sister, and Desirae, Minor's girlfriend, were eye-witnesses that testified for the defense. Crystal and Desirae testified that both Dominique and Minor had a gun at the time of the shooting, but that they only saw Minor fire shots. According to Crystal and Desirae, Dominique came out of the house with a gun after they arrived, and Demetrion was trying to take the gun away from Dominique when Minor fired into the air. The women testified that Minor fired three shots into the air, but did not aim the gun at anyone. As Demetrion and Dominique fled, Demetrion tripped and fell, causing Dominique to fall on top of him. Crystal and Desirae testified that while Dominique did have a gun, they never saw or heard him fire his gun.

{¶22} The testimony of the defense's eye-witnesses also contained inconsistencies. For example, Crystal and Desirae disagreed as to whether Dominique had the gun behind his back or in his pocket when he came out of the house. Crystal testified that Dominique pulled the gun out, but did not cock the gun or point it at anyone. Desirae, however, testified that Dominique had the gun in his pocket and never pulled it out.

{¶23} Crystal testified that she was driving away when she saw Demetrion "get up off the ground * * * holding his chest." She thought he had been shot, but admitted that she did not call 911 or contact the police for two days. She explained that she knew Demetrion had died because she kept receiving voicemails saying that Minor had killed Demetrion. Crystal testified that the evening of the shooting they drove up to Cleveland, but returned to her aunt's house that night. The following two days, according to Crystal, they stayed at her aunt's house and did not do much of anything until they went to the police station on September 20.

{¶24} Desirae testified that when she saw Demetrion get up holding his chest she did not think he was shot. Instead, she thought he was just out of breath. Desirae said they drove up to Cleveland to meet Minor later that night, but denied that they ever received any phone calls informing them that Demetrion was dead. Desirae explained that she found out Demetrion had died on the evening news in Cleveland. Desirae further testified that they stayed the night in Cleveland and returned to Crystal's aunt's house the following day. Desirae said they went to the police station on September 19.

{¶25} Detective David Garro, of the Akron Police Department's Major Crimes Unit, testified that he took statements from Crystal, Desirae, and another woman named Darnetta late on September 20, 2011, when they came into the police station. Darnetta was with Crystal and Desirae at the time of the shooting. Detective Garro testified that he did not find their statements to be credible, and that their statements appeared to have been rehearsed. Their statements, taken more than 48 hours after the shooting, were the only ones that mentioned Dominique had a gun at the scene of the shooting.

{¶26} Detective Garro and Detective Aron Hanlon interviewed eye-witnesses shortly after the shooting, all of whom said Minor was the only person with a gun. Detective Garro interviewed Dominique and Tionna at the scene, while Detective Hanlon interviewed Amar at the hospital.

{¶27} Minor's third witness was Brandi Gibbs, Demetrion's girlfriend. Gibbs testified that she was not at Day Street at the time of the shooting, but saw Dominique two days later when he brought a gun over to her house. Gibbs further testified that Desirae had asked her to make a statement to the police that she saw Dominique with a gun the day before, the day of, and the day after the shooting. Gibbs, however, said that was not true.

**{¶28}** There is conflicting testimony about whether Dominique had a gun at the time of the shooting. However, "[a] conviction is not against the manifest weight because the jury chose to credit the State's version of the events." *State v. Breneman*, 9th Dist. No. 11CA0039, 2012-Ohio-3632, ¶ 9, quoting *State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, ¶ 18. Moreover, the testimony was consistent, from all eye-witnesses, that Minor was the only one to discharge a firearm. After a careful review of the record, we cannot conclude that this is an extraordinary case where the jury clearly lost its way. Minor's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, Minor's sole assignment of error is overruled.

III

**{¶29}** Minor's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

MICHAEL J. CHESELKA, JR., Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.