[Cite as *State v. Wilson*, 2014-Ohio-376.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

TRAMELL RAYSHAWN WILSON

    Appellant

C.A. No.      26683

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      CR 12 02 0332

DECISION AND JOURNAL ENTRY

Dated: February 5, 2014

---

HENSAL, Judge.

{¶1} Appellant, Tramell Rayshawn Wilson, appeals from his convictions in the Summit County Court of Common Pleas. For the following reasons, this Court affirms in part and reverses in part.

I.

{¶2} In the early morning hours of June 18, 2011, Deontrae Minor and De'Andre Tucker were hanging out in the parking lot of the Embassy nightclub on Romig Road in Akron. After Minor made eye contact with Wilson, Wilson approached him, pulled out a gun, and fired a shot between his legs. The shot missed him, but left a hole in his shorts. Wilson, while pointing the gun at Minor, asked where he was from. Wilson next turned to Tucker and pointed the gun at him. He asked Tucker if he "want[ed] some." Tucker offered him anything he wanted in an effort to persuade him to put the gun down, but without answering, Wilson shot him. As Tucker fell to the ground, Wilson continued shooting, allegedly hitting him a total of nine times.

Wilson "calmly" walked away from the scene. Minor and Tucker did not know Wilson prior to the shooting.

{¶3} Two days after the shooting, both Minor and Tucker identified Wilson from a photo array that the police showed to them. A warrant was issued for Wilson's arrest, and he eluded the police until he was apprehended on February 1, 2012.

{¶4} The Grand Jury indicted Wilson on two counts of felonious assault, each with a repeat violent offender and firearm specification, and one count of having weapons while under disability. Wilson pleaded not guilty to all the charges, and the matter proceeded to a jury trial. No physical evidence was introduced to connect Wilson to the crimes, and the State's case largely relied on the victims' identification of Wilson as the shooter. He was convicted of all charges, and the court sentenced him to a total of 21 years in prison. Wilson filed a timely appeal of his convictions, and presents five assignments of error for this Court's review. We rearrange Wilson's assignments of error to facilitate our analysis.

II.

ASSIGNMENT OF ERROR I

TRAMELL WILSON WAS DENIED DUE PROCESS BECAUSE THE TRIAL COURT DENIED HIS MOTION FOR THE APPOINTMENT OF AN EYE WITNESS-IDENTIFICATION EXPERT.

{¶5} Wilson argues that the trial court abused its discretion in denying his pretrial motion for the appointment of an eyewitness-identification expert at the State's expense. This Court does not agree.

{¶6} This Court "review[s] a trial court's decision whether to allow an indigent defendant the resources to obtain an expert witness for an abuse of discretion." *State v. Simmons*, 9th Dist. Summit No. 25275, 2011-Ohio-916, ¶ 12. An abuse of discretion "implies

that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

> {¶7} The Ohio Supreme Court has said that:
>
> Due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial.

*State v. Mason*, 82 Ohio St.3d 144 (1998), syllabus. "In the absence of a particularized showing of need, due process * * * does not require the provision of an expert witness." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, ¶ 22, citing *Mason* at 150.

{¶8} Wilson's pretrial motion requested that the court continue the scheduled trial "so [that] Defendant may find an expert in eyewitness testimony." He further argues in his motion that "[t]he case is based largely on this type of evidence and it is imperative that Defendant be afforded the opportunity to provide testimony on the unreliable nature of this evidence." Wilson requested "financial assistance" with which to obtain the expert, as he was indigent. Five days after filing his motion, Wilson submitted his own affidavit wherein he averred that he could not afford to hire an expert and that he was "aware that it is imperative to have an expert on eyewitness testimony."

{¶9} In denying Wilson's motion, the trial court relied mainly on our holding in *State v. Preib*, 9th Dist. Summit No. 20183, 2001 WL 169090 (Feb. 21, 2001). The defendant in *Preib* argued that an expert should have been appointed as he "could have pointed out the problems with the eyewitness identification and * * * questioned the reliability of the photo array in [the] case." *Id*. at *2. This Court affirmed the trial court, and found that Preib "failed to set forth

specific facts" that justified the necessity of the expert and that he was able to emphasize any inconsistencies in the identification process through cross-examination and closing argument. *Id*. In applying our holding in *Preib*, the trial court in the instant case found that Wilson "fails to provide any explanation as to why a state-funded expert on the issue of eyewitness identification should be appointed in this matter."

{¶10} Wilson's motion for an expert failed to satisfy his burden of a "particularized showing" that there was a reasonable probability that such an expert would aid in his defense and that he would be denied a fair trial if his request was denied. *Mason* at syllabus. Wilson's motion failed to delineate any specific reasons why an expert was necessary other than it was "imperative" and that eyewitness testimony is "unreliable." Further, his motion made no argument that he would be denied a fair trial if an expert was not appointed. Given the limited argument Wilson made in his motion for an expert, this Court does not conclude that the trial court abused its discretion in denying the motion. Wilson's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE CONVICTION FOR THE CRIME OF FELONIOUS ASSAULT IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} In his second assignment of error, Wilson argues that his felonious assault convictions are against the manifest weight of the evidence. This Court disagrees.

{¶12} Wilson was convicted of violating "Revised Code Section 2903.11(A)(1)/(A)(2)," which provides that "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another * * * (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." To determine whether Wilson's convictions were against the manifest weight of the evidence, this Court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340, (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*

{¶13} Wilson argues that he should not have been convicted of felonious assault as: (1) there was no physical evidence that connected him to the shootings; (2) a van the police initially thought was used by the shooter was never linked to Wilson; (3) the gun used in the shootings was never located; (4) there was no evidence of a motive in the shooting; (5) Wilson's witness, Treva Griffen, testified that he was not the shooter; (6) the photo array shown to the victims was "flawed and suggestive," and (7) the victims' testimony was unreliable.

{¶14} The State presented the testimony of several witnesses at trial, including that of the victims, Deontrae Minor and De'Andre Tucker. Tucker testified that he and three other men, including Minor, were out celebrating his cousin's birthday. They arrived at the Embassy around 2:00 a.m. According to Tucker, the parking lot was full of people, and they were talking to and hanging out with people before getting in line to go inside the club. He testified that it was dark outside, but that there was plenty of lighting in the parking lot. Minor also denied on cross-examination that the parking lot was dark. He testified that he "[could] see every single face[.]"

{¶15} Minor testified that, as he was hanging out in the parking lot, he made eye contact with a male, who he identified as Wilson. According to Minor, Wilson appeared as if he wanted to fight him, so he "balled [his] hands up[] [to] get prepared to fight." Wilson walked towards Minor, pulled out a gun that he described as a MAC-10 with a long clip, and fired one shot that put a hole in his shorts, but did not strike his body. Minor testified that Wilson continued to point the gun at him and asked where he was from. Minor told him he was from Chicago and that he did not have a problem with Wilson.

{¶16} Tucker testified that he was standing three or four feet from Minor and witnessed what occurred. According to Tucker, Wilson then pointed the gun at him and asked, "Do [you] want some?" Tucker testified that he believed Wilson was intoxicated or high on drugs because his "words sort of ran into each other." Tucker offered to give Wilson anything that he wanted and told him to put the gun down. According to Tucker, Wilson shot him without saying another word, and continued to shoot him in the back and legs as he fell to the ground. Tucker testified that he was shot nine times from approximately three feet away. Both Minor and Tucker testified that Wilson walked away after shooting Tucker. Minor testified that Wilson walked away with another male, while Tucker testified that Wilson walked away "calmly." Neither Minor nor Tucker knew Wilson prior to that night, and did not know why he shot them. Tucker testified that he suffered extensive injuries to his back, legs and ankle which required surgical repair and left him unable to walk for over two months.

{¶17} Wilson is correct that, other than the testimony of Minor and Tucker, there was no direct evidence that linked him to the shooting. The State presented the testimony of Akron Police Officer Michael Rinn, however, who testified that the six ammunition casings and two

bullet slugs recovered at the scene were not tested for DNA or fingerprints because any such evidence that would be present on the bullets is destroyed after they are fired.

{¶18} Wilson next argues that the State was never able to connect a blue van to him that police initially thought was linked to the shooter. It is clear from the testimony that this theory was investigated and discarded. The lead detective, Robert Richardson, testified that another officer received information that the shooter may have been a male by the name of "Jamell" who had long dread locks and drove a blue van. According to Detective Richardson, Wilson's first name of Tramell was misheard as "Jamell" and that, on Wilson's Facebook page, there was a photo of him with a blue van. Detective Richardson was unsure at trial if the owner of the van was an individual by the name of Jamell Johnson. Further, there was no testimony from any witness, including Wilson's own witness, that a blue van was present at the scene when the shooting occurred. Both Minor and Tucker testified that the shooter walked away. Wilson's witness, Treva Griffen, also testified that the shooter walked away. Given the witnesses' testimony, whether a blue van was connected to Wilson is of minor relevance.

{¶19} In addition, Wilson's argument that his convictions are against the manifest weight of the evidence because the State did not prove a motive for the shooting is without merit. "[T]he question of motive is generally relevant in all criminal trials, even though the prosecution need not prove motive in order to secure a conviction." *State v. Curry*, 43 Ohio St.2d 66, 70-71 (1975). While motive may be relevant, it is not an element of the crime of felonious assault. *See* R.C. 2903.11(A)(1) and (A)(2); *State v. Foster*, 5th Dist. Richland No. 2009CA0042, 2009-Ohio-3337, ¶ 42 and 45. The State, therefore, was not required to establish a motive for the shootings.

**{¶20}** Wilson next argues that his convictions were against the manifest weight of the evidence because he produced the testimony of one witness, Treva Griffen, who testified that Wilson was not the shooter. Griffen testified that she was walking out of the Embassy when she witnessed the shooting, which happened right behind her sister's car. According to Griffen, the shooter walked up to one of the victims and shot him. She testified that she knew Wilson from the "neighborhood" even though she never said more than "hi" to him. According to Griffen, the shooter was not Wilson but rather someone she had never seen before.

**{¶21}** Whether the jury believed Griffen's testimony is an issue of credibility. "[T]he credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Griffen testified that she never told the police what she witnessed as she did not want to become involved in something that did not have anything to do with her. Several months after the shooting, she saw Wilson's mother at the beauty salon where she worked. Griffen gave Wilson's mother her telephone number and told her what she saw after hearing Wilson's mother talk about the incident. Further, Griffen acknowledged that she had five prior convictions for theft, thus putting her credibility squarely at issue.

**{¶22}** Wilson next argues that his convictions are against the manifest weight of the evidence because the photo arrays shown to the victims were "flawed and unduly suggestive." Detective Richardson testified that he initially compiled the array by choosing photos of suspects with the name of "Tramell" as that is the only information about the shooter his investigation had produced. At the time, Detective Richardson did not have a description of the shooter's hairstyle. He testified that, later that day, he received a telephone call from Tucker's aunt, Dione Vinson, who stated that she believed the shooter was Wilson and that she had accessed some

photos on his Facebook page. Detective Richardson had already chosen to use a photo of Wilson in the array prior to Vinson's call.

{¶23} Detective Richardson testified that he did not want "contamination" of the photo array because the hairstyle of all the subjects in the array were similar to Mr. Wilson's. Specifically, Detective Richardson did not "want even the thought of * * * the victim seeing these photos from Facebook already and saying I know this hairstyle, I know what he looks like * * *." According to Detective Richardson, he then changed the photo array by switching the photo of Wilson to depict a different hairstyle than the style of hair he had at the time of the shooting and in the Facebook photos.

{¶24} Officer Russell Bassett, at the request of Detective Richardson, showed the photo arrays to both Minor and Tucker. Officer Bassett testified that he acted as the "blind administrator" of the array, which means that he did not know who the suspect was in the array. He administered the array to Minor at his home on June 20, 2011. Minor picked out a photo of Wilson from the array, and stated that he was 90-95 percent certain that was a photo of the shooter. Officer Bassett testified that he administered the same array to Tucker 25 minutes later at the hospital. Tucker initially identified a different person as the shooter from the array. He stated to Officer Bassett that the photo he initially chose "looks like the person, I'm just making sure." However, upon viewing all the photos in the array, Tucker positively identified a photo of Wilson, and stated with 100 percent certainty that he was the shooter. Tucker testified that:

> They came with a photo array I would say three times, approximately, they asked me to choose a photo of Mr. Wilson and – oh, the guy who shot you is what they said, they didn't say his name; they said the guy who shot you, could you pick out a photo, we're going to bring you a photo array, can you pick him out and I said absolutely.

Tucker testified that he was unaware that his aunt had looked up Wilson on Facebook or that she had relayed the information she had to the police.

{¶25} Wilson neither sought to suppress the victims' identification nor objected to the photo array testimony at trial. Because Criminal Rule 12 "requires challenges to the admissibility of identification testimony to be raised by way of a motion to suppress," Wilson has forfeited any objection to the photo array identification, and is limited to a claim of plain error on appeal. *State v. Jones*, 9th Dist. Summit No. 26226, 2012-Ohio-2744, ¶ 14. Wilson does not argue plain error on appeal and he did not assign the validity of the photo array as a separate assignment of error. Accordingly, Wilson has not demonstrated that his conviction is against the manifest weight of the evidence on the basis of the allegedly flawed photo array.

{¶26} Finally, Wilson points out inconsistencies in the victims' testimony that he argues makes their identification of him unreliable. Minor testified that Wilson was approximately three feet in front of him during the incident. He told the police that night that, while he did not know the shooter, he would be able to recognize him again. According to Detective Richardson, Minor described the shooter as lighter skinned than he, between five feet 11 inches and six feet one inch, with a goatee. Minor denied at trial that he told the police that the shooter had a goatee.

{¶27} Minor's testimony was also inconsistent on some other details. He was adamant that the shooting happened at 1:00 a.m., when the testimony of the other trial witnesses revealed that it occurred around 3:20 a.m. In addition, Minor could not definitively identify the color of the gun.

{¶28} Tucker testified that he was approximately three feet away from the shooter. He further testified that, at the time he was receiving medical attention at the scene, he could

remember the shooter's face. According to Tucker, Wilson had medium-length "dreads or locks of some sort" at the time of the shooting. Even though he had consumed one mixed drink and three shots of tequila that night, Tucker stated that he was not drunk and that the alcohol had no impact on his ability to remember the shooter's face. Tucker further testified that, even though he took his prescribed blood pressure medicine on the morning of the shooting, it did not produce any side effects when combined with the alcohol he consumed.

{¶29} Tucker acknowledged that he was interviewed by a police officer, later identified as Officer Matthew Beech, as he was being loaded into the ambulance after the shooting. Officer Beech testified that Tucker told him that the shooter was a black male, six feet tall, 215 pounds, with a medium skin tone and a "small afro." At trial, Tucker denied telling the officer that the shooter was slightly darker than he with a "mini afro." Detective Richardson testified that he interviewed Tucker at the hospital the night of the shooting, but that he did not provide a description of the shooter at that time.

{¶30} Tucker's testimony conflicted with Minor's testimony on some details. Minor testified that prior to arriving at the Embassy, he was riding in a car with only Tucker. Tucker testified that Minor was riding in a car with him and two other people. Tucker testified that the group passed by a club, but did not go in because there was a line to get in. From there, according to Tucker, the men went to a restaurant to eat prior to going to the Embassy. Minor testified that they were "[r]iding around" but did not state that the men went to a restaurant. Detective Richardson testified that Minor told him that the men were coming from a nightclub on Main Street in downtown Akron, which Minor denied saying at trial. Detective Richardson further testified that Minor initially told him he was only with Tucker, but then changed his story

and said that Tucker's brother was there also. Whereas Minor equivocated on the color of the gun, Tucker testified that the gun was black.

**{¶31}** "A jury is free to believe or reject the testimony of each witness, and issues of credibility are primarily reserved for the trier of fact." *State v. Rice*, 9th Dist. Summit No. 26116, 2012-Ohio-2174, ¶ 35. On the one hand, both Minor and Tucker identified Wilson as the shooter both from a photo array and at trial. On the other hand, Treva Griffen testified that she knew Wilson, and that he was not the shooter. "[A] conviction is not against the manifest weight because the jury chose to credit the State's version of the events." *State v. Minor*, 9th Dist. Summit No. 26362, 2013-Ohio-558, ¶ 28, quoting *State v. Breneman*, 9th Dist. Wayne No. 11CA0039, 2012-Ohio-3632, ¶ 9. Based on our review of the record, this Court does not find that the jury clearly lost its way in convicting Wilson of felonious assault. Wilson's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED WILSON'S CONSTITUTIONAL RIGHTS WHEN IT ALLOWED ADMISSION OF DEFENDANT'S OUT OF COURT STATEMENTS IN VIOLATION OF EVID. R. 401, 402, 403 AND 804(B)(3).

**{¶32}** In Wilson's third assignment of error, he argues that the trial court erred in allowing the admission of excerpts from several recorded jailhouse telephone calls Wilson made after his arrest. We do not agree.

**{¶33}** "Trial courts possess broad discretion in determining the admissibility of evidence." *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 9, citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). "As such, this court will not overturn a trial court's evidentiary determination in the absence of an abuse of discretion that resulted in material

prejudice to the defendant." *Id*. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore*, 5 Ohio St.3d at 219.

**{¶34}** At trial, the State played excerpts from three recorded telephone calls Wilson made from jail to an unknown female. In two of the calls, Wilson questioned why the police said there were two victims. In the third call, Wilson discusses being out on bond as long as possible and stated that "anything can happen * * * people might find a heart and be like * * * they don't want to come."

**{¶35}** At trial, the State argued that these statements were admissible and "against his interest" as only the shooter would likely know and question why he was being charged with felonious assault of two victims when only one person was hit by bullets. With regard to the statement about witnesses not wanting to come to trial, the State argued that statement was against his interest because no one but the shooter would care about witnesses testifying at trial. Wilson objected to the admission of the statements and argued that, because eight months had elapsed between the shooting and his arrest, "[h]e and just everyone else knew in town that there was one person shot." Wilson further argued that the statement about the witnesses "could be anything. * * * Maybe he was talking about his own witnesses, maybe they won't have the heart to come. * * * [Y]ou can interpret it the way the Prosecutor wants, but it can be interpreted another way, too." The trial court admitted the statements over Wilson's objection. In doing so, the trial court stated that, "I don't believe that the rule requires that it be an admission that he did something. It just requires that * * * it can be interpreted as a statement against interest * * *." From the record, it appears the trial court found the statements to be relevant because they could be construed as being against Wilson's interest.

{¶36} Wilson argues that the statements were not against his interest and irrelevant. He further argues that, even if the statements were relevant, any probative value was outweighed by the risk of prejudice. The State argues that the statements were relevant as to the identity of the shooter.

{¶37} Evidence Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence Rule 402 provides that "[a]ll relevant evidence is admissible" unless there is a stated exception. The two statements wherein Wilson expressed displeasure about the police stating that there were two victims indicates he knew that only one person was hit by bullets. Further, there was no testimony to support Wilson's theory that information about the victims was common knowledge in the community. This Court concludes that the trial court did not abuse its discretion when it found that these two statements were relevant and allowed their admission into evidence.

{¶38} Wilson's statement that perhaps witnesses will not testify the longer he is out on bond also may demonstrate that he is the shooter in that he believes there may be witnesses who could testify against him. Likewise, this Court concludes that the trial court did not abuse its discretion when it found that this statement was relevant and permitted the State to introduce it as evidence.

{¶39} Even if evidence is relevant, it may still be excluded by Evidence Rule 403. Rule 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Wilson sets forth a limited argument that the statements were "elicited only to mislead the jury" and that the probative value of the statements was outweighed by the

danger of unfair prejudice. We have already concluded that the statements were relevant to provide identity. This Court is not persuaded by Wilson's argument that the statements were an attempt to mislead the jury when the identity of the shooter was the central issue in the case. Further, other than pointing to the fact that the State commented on the statements during closing arguments, he fails to develop any additional argument on this point. We have consistently held that, "[i]f an argument exists that can support [an] assignment of error, it is not this court's duty to root it out. *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶40} Wilson further argues that the statements were improperly admitted as a hearsay exception under Evidence Rule 804(B)(3). He maintains that the statements could not be against his interest as he did not admit that he was guilty of an offense. Wilson does not, however, argue that the statements were inadmissible hearsay. It is clear from this Court's review of the record that, while couched in language found in Rule 804(B)(3), the trial court found the statements to be relevant and, therefore, admissible. The statements made are not, by definition, hearsay. *See* Evid.R. 801(D)(2). Therefore, any discussion at trial related to their admission as an exception thereto was misplaced. Because Wilson has not demonstrated that the trial court abused its discretion in allowing the statements to be admitted into evidence, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN FAILING TO MERGE THE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶41} Wilson argues in his fifth assignment of error that the trial court erred when it did not merge his convictions for felonious assault and having a weapon under disability as they are allied offenses of similar import. He maintains that the offenses should have merged because the

same gun was used to commit all the offenses. The trial court sentenced him to six years in prison on each felonious assault conviction, to be served consecutively. Wilson was sentenced to 36 months in prison on the weapons under disability conviction, to be served concurrent with the felonious assault sentences.

{¶42} Revised Code Section 2941.25(A) states that, "[w]here the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, * * * the defendant may be convicted of only one." If, however, "the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, * * * the defendant may be convicted of all of them." R.C. 2941.25(B). "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus. The Ohio Supreme Court held in *Johnson* that: "[T]he question is whether it is possible to commit one offense and commit the other with the same conduct * * *." (Emphasis deleted.) *Id*. at ¶ 48. "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id*. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act committed with a single state of mind.'" *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, at ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id*. at ¶ 50. "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if

the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Emphasis deleted.) *Id*. at ¶ 51.

**{¶43}** "Failure to merge allied offenses of similar import constitutes plain error, and prejudice exists even where a defendant's sentences are to run concurrently because 'a defendant is prejudiced by having more convictions than are authorized by law.'" *State v. Asefi*, 9th Dist. Summit No. 26430, 2012-Ohio-6101, ¶ 6, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31. Wilson concedes that, because he did not object to the separate sentences at the trial court level, he has waived all but plain error.

**{¶44}** The State argued at sentencing that the having weapons under disability conviction was not an allied offense "because the premise of that is he wasn't supposed to be having a gun to begin with because he's a felon." As stated above, Wilson neither objected to the separate sentences nor argued in favor of merging the felonious assault convictions with the having a weapon under disability conviction. The record is devoid of any evidence that the Court considered the issue of whether the offenses were allied and of similar import prior to imposing sentence.

**{¶45}** In order for this Court to decide whether Wilson's offenses are allied offenses of similar import, we would be required to apply *Johnson*. This Court has consistently declined to apply the analysis set forth in *Johnson* when there is no evidence that the trial court has done so in the first instance. *State v. Chisholm*, 9th Dist. Summit No. 26007, 2012-Ohio-3932, ¶ 22; *State v. Castagnola*, 9th Dist. Summit Nos. 26185, 26186, 2013-Ohio-1215, ¶ 33. Accordingly, this matter must be remanded to the trial court for it to apply *Johnson* and to determine whether the felonious assault and having weapons under disability offenses should merge. "Moreover, in the event that the offenses are allied, 'the State also must have the opportunity to elect the

offense[s] upon which it wishes to proceed to sentencing.'" *Asefi*, 2012-Ohio-6101 at ¶ 8, quoting *State v. Ziemba*, 9th Dist. Summit No. 25886, 2012-Ohio-1717, ¶ 23. Wilson's fifth assignment of error is sustained solely on the basis that this matter must be remanded, consistent with the foregoing discussion.

## ASSIGNMENT OF ERROR IV

TRAMELL WILSON RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS COUNSEL DID NOT FILE A MOTION TO SUPPRESS, FILE AN EFFECTIVE MOTION FOR THE APPOINTMENT OF AN EYEWITNESS-IDENTIFICATION EXPERT, FAILED TO BIFURCATE DEFENDANT'S WEAPONS UNDER DISABILITY CHARGE AND TO OBJECT TO HEARSAY AND ALL "OTHER ACTS" EVIDENCE OFFERED BY THE PROSECUTION AND FAILED TO OBJECT TO THE COURT'S FAILURE TO MERGE ALLIED OFFENSES.

{¶46} In his fourth assignment of error, Wilson argues that he was denied the effective assistance of counsel. We do not agree.

{¶47} In order to prove a claim of ineffective assistance of counsel, Wilson must demonstrate that his counsel's performance was deficient and that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, a defendant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

**Failure to File a Motion to Suppress**

{¶48} Wilson argues that his trial counsel was ineffective for failing to file a motion to suppress the photo array identification testimony due to its unreliability and suggestiveness. "The failure to file a motion to suppress is not per se ineffective assistance of counsel." *State v. Kuhn*, 9th Dist. Lorain No. 05CA008859, 2006-Ohio-4416, ¶ 11, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). "Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted." *Id*. "Even if there is a reasonable probability that the motion would have been granted, the failure to pursue it cannot be prejudicial unless there is also a reasonable probability that, without the excluded evidence, the defendant would have been acquitted." *State v. Malone*, 9th Dist. Lorain No. 10CA009754, 2011-Ohio-2445, ¶ 14, citing *Madrigal* at 389.

{¶49} Even if the motion to suppress would have been granted, as Wilson suggests, he has failed to demonstrate that there was a reasonable probability he would have been acquitted. Both Minor and Tucker positively identified Wilson at trial. Wilson cross-examined Minor and Tucker extensively on the circumstances of the incident and the description of the shooter they gave to the police. Both men did not waver in their identification of Wilson. Despite cross-examination on the inconsistencies in their descriptions, the jury found the victims' trial testimony, which identified Wilson as the shooter, to be credible. Based on the foregoing, this Court does not conclude that there was a reasonable probability Wilson would have been acquitted if the photo array were suppressed. Accordingly, Wilson's counsel was not ineffective for failing to file a motion to suppress.

**Ineffective Motion for an Identification Expert**

{¶50} Wilson next argues that his counsel was ineffective because his motion for an identification expert was inadequate and, consequently, not granted by the trial court. The trial court denied Wilson's motion for a state-funded identification expert on the basis that he failed to set forth in his motion why such an expert was necessary. While the motion clearly did not set forth more specific reasons why Wilson allegedly needed an identification expert paid for by the State, it would be speculation to assume such a motion, even if it was more specific, would have been successful. Further, even if Wilson's counsel was deficient for failing to file a more specific motion, he has not shown that he was prejudiced given his ability to cross-examine the victims and the various police officers about inconsistencies in the victims' testimony concerning the shooter's identifying characteristics. Wilson has, therefore, not demonstrated that he was denied effective counsel.

**Failure to Object to Hearsay**

{¶51} Wilson maintains that his counsel was ineffective for failing to object to what he alleges were hearsay statements. The statements he alleges his counsel should have objected to were statements made to Minor by individuals in the parking lot telling him that they knew the shooter. In addition, Wilson argues that his counsel should have objected when Minor testified that unidentified individuals showed him photos from Facebook of who they believed to be the shooter months after the incident. He further maintains that Detective Richardson's testimony about being contacted by Tucker's aunt, who gave him information and photos of who she believed was the shooter, was also hearsay and objectionable. The crux of Wilson's argument is that the admission of the allegedly hearsay statements bolstered the victims' credibility in their identification of Wilson.

{¶52} "[T]he failure to make objections to inadmissible hearsay is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Caldwell*, 9th Dist. Summit No. 26306, 2013-Ohio-1417, ¶ 17, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 103. "The defendant still has to show that there was a substantial violation of counsel's essential duties to his client and that he was materially prejudiced by his lawyer's ineffectiveness." *Id.*, citing *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988).

{¶53} Minor testified that he asked people in the parking if they knew the identity of the shooter. According to Minor, these unidentified people from the parking lot told him: "Like everybody was, like, oh, I know him. They ain't never said no name, no nothing." Minor further testified that, "I just found that off people who came, you know, like, probably like five or six months later, and they come to me showing me, oh, this is him on his Facebook." Wilson has failed to demonstrate how he was prejudiced by these statements that do not identify or implicate him in any way. Further, with regard to Minor's testimony about seeing Wilson's Facebook page five or six months after the fact, Minor had already identified Wilson from the photo array and a warrant for his arrest was already issued. It is, thus, probable that Minor would know Wilson's name by that time.

{¶54} Detective Richardson testified that, prior to showing the photo array to Minor and Tucker, he received a telephone call from Tucker's aunt. According to Detective Richardson, the aunt "[said] who they thought the person was and that they gave me some information about a Facebook page. They said that they were actually on this person's Facebook page, the vehicle they drive, and they have photos of this individual and they told me their name." This Court notes that this testimony neither reveals the particular details of the conversation nor directly links Wilson to the Facebook page.

**{¶55}** As none of the statements cited by Wilson directly implicate him in the shooting, he has not demonstrated how their admission bolstered the victims' identification testimony. Accordingly, Wilson fails to establish how he is prejudiced by his counsel's failure to object to these statements.

**Failure to Bifurcate Having a Weapon under Disability Charge**

**{¶56}** In addition, Wilson contends that his counsel was deficient when he failed to move to bifurcate the having a weapon under a disability charge to try to the court. He argues that the jury was then forced to hear about his prior felonious assault and drug convictions, which may have incited them to convict him on the present offenses.

**{¶57}** Wilson's counsel stipulated to the prior convictions relevant to the having a weapon under disability charge to prevent the State from entering into the record the journal entries of his convictions. His counsel specifically stated that, "I would rather stipulate * * * than have a journal entry put in."

**{¶58}** Wilson has not demonstrated how the outcome of his trial would have been different but for his counsel's performance. "An attorney's decisions not to file certain pretrial motions, including a motion to sever changes for separate trials, are debatable trial tactics that generally do not constitute a deprivation of effective counsel." *State v. Griffin*, 9th Dist. Lorain No. 11CA010128, 2013-Ohio-416, ¶ 44, citing *State v. Aaron*, 9th Dist. Summit No. 21434, 2003-Ohio-5159, ¶ 23. Given the amount of testimony at trial positively identifying Wilson as the shooter, he has failed to prove how bifurcating the weapons under disability charge would have affected the outcome of his trial.

**Failure to Object to Multiple Sentences**

{¶59} Wilson next argues that his counsel was ineffective for failing to object "to the imposition of multiple sentences for allied offenses of similar import." Given our resolution of his fifth assignment of error, his argument on this issue is now moot and we decline to address it. *State v. Ross*, 9th Dist. Summit No. 25778, 2012-Ohio-1389, ¶ 29-30; App.R. 12(A)(1)(c).

**Cumulative Effect of Errors**

{¶60} Finally, Wilson maintains that the cumulative effect of his counsel's alleged instances of deficient performance demonstrates he was deprived of the effective assistance of counsel. "Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial." *State v. Boone*, 9th Dist. Summit No. 26104, 2013-Ohio-2664, ¶ 38, citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. If there were not multiple errors, however, the cumulative error doctrine does not apply. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132. Because this Court did not find any instances wherein Wilson was deprived of the effective assistance of counsel, the cumulative error doctrine does not apply. *State v. Brooks*, 9th Dist. Summit No. 23237, 2007-Ohio-1424, ¶ 40. Wilson's fourth assignment of error is overruled.

III.

{¶61} Wilson's first, second, third, and fourth assignments of error are overruled. His fifth assignment of error is sustained insofar as the matter is remanded for the trial court to apply *State v. Johnson* in the first instance. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶62} I concur in judgment only as to the majority's resolution of the third assignment of error.

**{¶63}** The trial court erred by admitting Wilson's statements made during the phone calls as statements against his interests pursuant to Evid.R. 804(B)(3) because that rule "does not apply to statements made by a party to the action." *State v. Webster*, 1st Dist. Hamilton No. C-120452, 2013-Ohio-4142, ¶ 66. The admission of any statement by Wilson himself could only fall under the purview of Evid.R. 801(D)(2) which governs admissions. These parameters were established in the Staff Notes to Evid.R. 804(B)(3), which provide in relevant part:

> The declaration against interest applies to statements of persons other than parties to the action and should be distinguished from statements of parties to the action. The out-of-court statement of a party opponent in the action is an admission, not a declaration against interest. An admission of a party opponent is governed by Rule 801(D)(2) as non-hearsay and does not require the admission to be against the party's "interest" and does not require that the party be "unavailable" before the statement may be admitted.

**{¶64}** Instead, the trial court should have considered whether the statements constituted non-hearsay admissions pursuant to Evid.R. 801(D)(2). In this case, I believe that the challenged statements were not admissible pursuant to Evid.R. 801(D)(2), as they did not contain any admissions giving rise to Wilson's culpability. However, I cannot conclude that this error was prejudicial for the same reason, namely because the statements did not implicate his culpability. Accordingly, I agree that the majority properly overruled the third assignment of error.

**{¶65}** I concur in the remainder of the majority's opinion.

APPEARANCES:

JOHN C. RAGNER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.